THE STATE EX REL. DE PUY vs. EVANS.

*September 4 — October 2, 1894.*

*Criminal law and practice: Complaint and warrant: Change of venue: Writ of prohibition.*

1. A criminal complaint, subscribed and sworn to before a magistrate and purporting to have been made after the complainant had been duly sworn, will be regarded as a sufficient examination of the complainant on oath, under sec. 4776, R. S.

2. Under sec. 4809, R. S. (providing that if a person brought before a magistrate for examination shall make oath of prejudice the magistrate "shall transmit all the papers in the case to the nearest justice or other magistrate, qualified by law to conduct the examination"), the question whether the nearest justice or other magistrate is so qualified must be summarily determined by the magistrate before whom the oath of prejudice is made, and his determination is conclusive.

3. A warrant for the arrest of a person accused of a crime is insufficient if it fails to state any town, village, city, or county in which the alleged offense was committed or the proceedings instituted. A reference to "said county" is unavailing if no county is mentioned.

4. A writ of prohibition will not issue to restrain a justice of the peace from proceeding with a preliminary examination, merely because of a defect in the warrant of arrest or because of an alleged former jeopardy of punishment, the ordinary legal remedies being adequate.

APPLICATION for a Writ of Prohibition.

This is an original application to this court for a writ of prohibition. The facts alleged in the relator's verified petition, filed herein July 18, 1894, and in the return, are as follows:

On February 17, 1893, a complaint upon information and belief was made by one Charles G. Deissner before the defendant as justice of the peace, charging the relator with having on October 17, 1892, at the county of Waukesha, committed the crime of adultery with his niece, Helen May De Puy. Thereupon said justice forthwith issued his warrant for the arrest of the relator, and he was thereon arrested, February 18, 1893, and brought before said justice for examination. The justice refused to dismiss said proceedings for want of jurisdiction. A full examination of the relator was had on the part of the state before him, whereupon, and on March 13, 1893, the said magistrate did adjudge that the offense had been committed, and that there was probable cause to believe the relator guilty, and did bind him over to the circuit court of Waukesha county for trial, and fixed his bail at $4,000, which was given by the relator. Thereupon said magistrate certified a full return of the proceedings and of his said examination to the circuit court, together with the stenographer's transcript of all the testimony, and the same was filed in said circuit court May 20, 1893. On May 23, 1893, the district attorney filed in said circuit court his information in said action, in the ordinary form, and on May 24, 1893, the relator was arraigned in said circuit court upon said information, and entered his plea of not guilty. On May 24, 1894, a jury was

duly impaneled and sworn in said court to try him for said offense. The district attorney fully opened and stated his case to said jury, and called a witness on behalf of the state, who was sworn therein. The court thereupon sustained an objection to any evidence on the ground that the information did not charge an offense, and discharged the relator from custody.

Thereafter, and on said May 24, 1894, another complaint was made in writing and on oath by one Mabel Dougherty, before one T. W. Parkinson, a justice in and for said Waukesha county, charging the relator with the same identical offense at the same time and place as charged in said previous complaint, warrant, and information. A warrant was thereupon issued by said magistrate, and the relator was again arrested, May 24, 1894, and brought before said magistrate for another examination. The action was then removed to A. J. Dopp, the nearest magistrate qualified by law. Such proceedings were had therein that July 6, 1894, the cause was dismissed for want of jurisdiction, and the relator was discharged by Justice Dopp.

On July 12, 1894, another complaint was made by said Mabel Dougherty before one George M. S. Jewett, a justice in and for said county of Waukesha, in the words and figures following, to wit:

"State of Wisconsin, County of Waukesha — ss: *The State of Wisconsin against Edwin M. De Puy.* Mabel L. Dougherty, being duly sworn, says that on the 17th day of October, in the year 1892, at said county, *Edwin M. De Puy* did then and there have sexual intercourse with one Helen May De Puy, a female, said Helen May De Puy then and there being the daughter of William H. De Puy, who was and is a brother of said *Edwin M. De Puy*, and did then and there have incestuous sexual connection and intercourse with said Helen May De Puy, daughter of said

brother of said *Edwin M. De Puy*, against the peace and dignity of the state of Wisconsin.    MABEL DOUGHERTY.

"Subscribed and sworn to before me this 12th day of July, 1894.    GEO. M. S. JEWETT, Justice of the Peace."

Said last-named magistrate thereupon issued his warrant upon said complaint, in the ordinary form, except as mentioned in the opinion. Upon said warrant the relator was again arrested, July 12, 1894, and brought before said last-named magistrate for another examination. The relator thereupon made the statutory oath of prejudice of said magistrate, whereupon said magistrate, Jewett, notwithstanding Justice Kimball was the next nearest justice of the peace, certified all the papers in said action to the defendant herein, as the next nearest justice qualified by law to hold said examination. Upon being brought before said justice *E. J. Evans*, and an objection to the jurisdiction having been overruled, the relator filed with the defendant his plea, in writing, of former jeopardy and acquittal of said charge, together with former examination, and all proceedings against the relator before the various magistrates and courts for the offense charged. The defendant in all things overruled said plea and objection, and said second examination was by him ordered to proceed before him, and the relator was by him, the said *E. J. Evans*, recognized to appear before him for such examination.

Thereupon the relator filed in this court his verified petition, reciting at length and in detail the foregoing proceedings, and obtained from this court the alternative writ of prohibition, which was duly served upon the defendant herein. To said writ the defendant returned under oath, in effect, a reiteration of the facts stated. To that return the relator demurred on the ground that the same did not constitute a defense.

For the relator there was a brief by *D. S. Tullar* and

*Ryan & Merton,* and oral argument by *Mr. Tullar* and
*E. Merton.* They contended, *inter alia,* that the writ
should be made absolute because: (1) There has been one
preliminary examination, at the close of which the defend-
ant was bound over for trial; and under the statutes of
this state there can be but one preliminary examination.
(2) The defendant has been put upon trial before a jury
upon a valid information and acquitted, and therefore can-
not be examined again for the same offense. (3) Justice
*Evans* has no jurisdiction to hold an examination because
he was not the nearest justice, and the papers should not
have been sent to him by Justice Jewett. That the writ
will lie, see *People ex rel. Mayor v. Nichols,* 79 N. Y. 591;
*Quimbo Appo v. People,* 20 id. 540; *Hayne v. Justice's Court,*
82 Cal. 284; 2 Spelling, Extr. Relief, § 1731.

*C. E. Armin* and the *Attorney General,* for the respond-
ent.

CASSODAY, J. In this state marriage " between parties
who are nearer of kin than first cousins, computed by the
rule of the civil law, whether of the half or of the whole
blood," is expressly forbidden. R. S. sec. 2330. Such a
marriage, " if solemnized within this state," is " absolutely
void without any judgment of divorce or other legal pro-
ceeding." R. S. sec. 2349. The statute, moreover, declares
that: " Any person being within the degree of consanguin-
ity within which marriages are prohibited or declared by law
to be incestuous and void, . . . who shall commit adul-
tery or fornication with each other, shall be punished by
imprisonment in the state prison not more than ten years,
nor less than two years." R. S. sec. 4582. Of course the
justice of the peace had no jurisdiction to hear, try, and
determine the guilt or innocence of the accused for such a
crime. R. S. sec. 4739. But he did have jurisdiction, upon
proper complaint being made, to issue his warrant in proper

form and cause the accused to be brought before him, and to examine into the matter so charged, and if he found upon such examination that the offense charged had been committed, and that there was probable cause to believe the prisoner guilty, then to hold him to bail or commit him for trial. R. S. secs. 4775–4792.

The complaint upon which the relator was last arrested was subscribed and sworn to by the complainant before Justice Jewett, and is set forth in the foregoing statement. It purports to have been made after the complainant had been duly sworn, and hence must be regarded as a sufficient examination of the complainant on oath to satisfy the statute. *State v. Nerbovig*, 33 Minn. 480; *State v. Davie*, 62 Wis. 305. It contains a substantial statement of the offense, in positive terms, and that seems to be sufficient. *Ford v. State*, 3 Pin. 449; *Gallagher v. State*, 26 Wis. 423. That complaint, therefore, gave to Justice Jewett jurisdiction to issue a warrant and cause the relator to be arrested and brought before him, and to examine whether the offense charged had been committed, and, if so, whether there was probable cause to believe the accused was guilty. He did issue a warrant and cause the relator to be brought before him for examination; and thereupon the relator made the statutory oath of prejudice, and demanded a change of venue, and the same was granted by sending the same to the defendant, as mentioned. It is claimed that the defendant, as justice, never got jurisdiction of the cause, because there was another justice of the peace having an office nearer to Justice Jewett than the defendant. But the statute did not require Justice Jewett to send the cause to the nearest justice, but only to "transmit all the papers in the case to the nearest justice or other magistrate, *qualified by law to conduct the examination.*" R. S. sec. 4809. This clearly implies that the cause is not to be sent to any justice or other magistrate who is disqualified by law to

conduct such examination, even though he be the nearest. Manifestly the question whether such "nearest justice or other magistrate" is so qualified or disqualified must be summarily determined by some one. We have no doubt that it must be determined by the justice or other magistrate before whom such oath of prejudice is so filed; that is to say, in this case, by Justice Jewett. He necessarily did so determine that question in this case after hearing evidence pro and con. The authority to so determine includes the possibility of making a wrong determination. Nevertheless we must, upon the repeated decisions of this and other courts, hold that such determination of the justice or other magistrate so transmitting the cause is conclusive upon the parties and the justice or other magistrate to whom the cause is sent. *Martin v. State*, 79 Wis. 173; *State v. Sorenson*, 84 Wis. 31.

The jurisdiction thus acquired by Justice Jewett by virtue of the complaint so made before him was successfully invoked in favor of the relator by the filing of his oath of prejudice as mentioned. Upon the filing of such oath and the transmission of the papers, such jurisdiction was necessarily transmitted to and vested in the defendant, as such justice of the peace. The exercise of the jurisdiction so vested in the defendant was thereupon invoked by the relator's asking the defendant, as such justice, to dismiss the proceeding on the ground that he had previously been put in jeopardy of punishment for the same offense, and upon the further ground that the cause should have been sent to Justice Kimball, instead of the defendant; but the defendant, as such justice, refused to dismiss upon either of those grounds.

The question whether the warrant issued by Justice Jewett was sufficient in form and substance to authorize the arrest of the relator and the holding of him in custody, is entirely a different question. It is a question which

might have been properly submitted to and passed upon by either Justice Jewett or the defendant. If what purports to be a copy of the warrant, before us, is correct, then the warrant was certainly defective. It nowhere mentions any town, village, city, or county in which the alleged offense was committed or the proceeding instituted. The statute requires the warrant to recite "the substance of the accusation and requiring the officer to whom it shall be directed forthwith to take the person accused and bring him before the said magistrate or before some other magistrate of the *county*, to be dealt with according to law." R. S. sec. 4776. The statute does not require the complaint to be attached to or accompany the warrant, but the sheriff or other officer receives the warrant alone to be executed. The words "said county," in the warrant in question, are without significance, since no county is therein mentioned.

The questions recur whether a writ of prohibition should be granted by reason of such defect in the warrant, or such alleged former jeopardy of punishment. This court has repeatedly held that a writ of prohibition will not be granted where there is any other adequate legal remedy. *State ex rel. Rogers v. Burton*, 11 Wis. 57; *State ex rel. Dilworth v. Braun*, 31 Wis. 606; *In re Radl*, 86 Wis. 645, and cases there cited; High, Extr. Leg. Rem. § 770. In the case last cited this court refused to grant such writ to restrain a mere *de facto* justice of the peace from trying and determining a criminal case pending before him. In the *Dilworth Case* cited, the writ was refused because the relator had an adequate remedy by other ordinary legal proceeding, to wit, by proving in the same action the former judgment in bar. For the defect in the warrant, mentioned, the relator certainly had numerous other adequate remedies. To allow such writ in such a case is to sanction its allowance in every case where the warrant is void upon its face, or where the complaint, information, or indictment is insuffi-

cient. That would be a complete revolution in criminal procedure. So this court has repeatedly held that under our statutes such writ issues only to restrain the acts of a court or other inferior tribunal exercising some judicial power *which it has no legal authority to exercise at all.* R. S. secs. 3457–3462; *State ex rel. Kellogg v. Gary,* 33 Wis. 93; *In re Radl,* 86 Wis. 645. In *State ex rel. Long v. Keyes,* 75 Wis. 288, the writ was invoked on the ground that the municipal judge was, without legal authority, exercising the inquisitorial function vested only in a grand jury, but the court held otherwise. In that case the present chief justice, speaking for the court, said: "The writ lies only to restrain the exercise of judicial functions *outside or beyond his* [the municipal judge's] *jurisdiction in the matter.*" 75 Wis. 298. The principles applicable are well stated by a late text writer: "A writ of prohibition is an extraordinary writ issuing out of a court of superior jurisdiction, and directed to an inferior court, commanding it to cease entertaining jurisdiction in a cause or proceeding *over which it has no control,* or where such inferior tribunal assumes to entertain a cause over which it has jurisdiction, *but goes beyond its legitimate powers, and transgresses the bounds prescribed to it by law.* . . . It should be issued only in cases of extreme necessity, and not for grievances which may be redressed by ordinary proceedings at law or in equity; and it is not demandable as a matter of right, but of sound judicial discretion, to be granted or withheld according to the circumstances of each particular case. . . . It is the means by which the superior court exercises its supervisory power over the inferior court, and keeps it within the limits of its rightful jurisdiction." 19 Am. & Eng. Ency. of Law, 263. To the same effect, High, Extr. Leg. Rem. (2d ed.), §§ 762, 763, 765, 781. It is collateral to and independent of the action or proceeding sought to be prohibited, and is to prevent further prosecution of the

same by a judicial tribunal having no jurisdiction thereof. *Ibid.* A writ of prohibition is not to perform the office of a writ of error. Its purpose is to prevent the inferior tribunal from assuming a jurisdiction not legally vested in it, or from exceeding its lawful authority. *State ex rel. Dawson v. St. Louis Court of Appeals*, 99 Mo. 216; *Alderton v. Archer*, L. R. 14 Q. B. Div. 1. Where the inferior tribunal has jurisdiction of the subject matter, and the defendant is duly served with process or voluntarily appears, a writ of prohibition will not be granted. *In re Cooper*, 143 U. S. 472.

If, as claimed, the relator had previously been put in jeopardy of punishment for the same offense, then that was a legitimate matter of defense in the ordinary way. A writ of prohibition is not to be resorted to where the usual and ordinary forms of remedy are sufficient to afford redress,— as by motion, trial, appeal, writ of error, *habeas corpus,* or otherwise. *State v. Nathan*, 4 Rich. Law, 513; *State ex rel. Berryhill v. Cory*, 35 Minn. 178; High, Extr. Leg. Rem. (2d ed.), § 771. Where the inferior tribunal has jurisdiction to do the act sought to be prohibited, but the manner of doing it is improper or even unauthorized, a writ of prohibition is not the remedy. *Ex parte Smith*, 23 Ala. 94; *People ex rel. Scannell v. Whitney*, 47 Cal. 584; *State ex rel. Wassell v. Judge of Fourth District Court*, 22 La. Ann. 115; *Dayton v. Paine*, 13 Minn. 493.

*By the Court.*— The demurrer to the return is overruled. and the alternative writ of prohibition is quashed.