# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2018AP291-W |
| COMPLETE TITLE: | State of Wisconsin ex rel. CityDeck Landing LLC, Petitioner, <br><br> v. <br><br> Circuit Court for Brown County, the Honorable Thomas J. Walsh, presiding, Society Insurance, Smet Construction Services Corporation and GB Builders, LLC, Respondents. |

PETITION FOR SUPERVISORY WRIT

| | |
|---|---|
| OPINION FILED: | February 21, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 10, 2018 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | A.W. BRADLEY, J. dissents, joined by ABRAHAMSON, J. (opinion filed) |
| NOT PARTICIPATING: | DALLET, J. did not participate. |

ATTORNEYS:

For the petitioner, there were briefs filed by *Eric M. McLeod*, *Paul D. Cranley*, *Katherine Smith Polich*, *Joseph S. Diedrich*, and *Husch Blackwell LLP*, Madison.

For the respondents, Circuit Court for Brown County and the Honorable Thomas J. Walsh, there was a brief filed by *Brian P. Keenan*, assistant attorney general, with whom on the brief was *Brad D. Schimel*, attorney general.

For the respondent, Society Insurance, there was a brief filed by *Jeffrey Leavell*, *Danielle N. Rousset*, *Brandon L. Parks*, and *Jeffrey Leavell*, *S.C.*, Racine.

**2019 WI 15**

No. 2018AP291-W
(L.C. No. 2017CV1324)

STATE OF WISCONSIN      :      IN SUPREME COURT

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

**State of Wisconsin ex rel. CityDeck Landing LLC,**

      **Petitioner,**

      **v.**

**Circuit Court for Brown County, the Honorable Thomas J. Walsh, presiding, Society Insurance, Smet Construction Services Corporation and GB Builders, LLC,**

      **Respondents.**

**FILED**

**FEB 21, 2019**

Sheila T. Reiff
Clerk of Supreme Court

PETITION for supervisory writ. *Granted; stay order vacated.*

¶1 REBECCA GRASSL BRADLEY, J. The circuit court ordered the arbitration of a private construction dispute stayed until it could decide an insurance coverage dispute between one of the contractors connected to the arbitration and the contractor's insurer. CityDeck Landing LLC petitions this court, pursuant to Wis. Stat. § (Rule) 809.71 (2015-16),[1] for a supervisory writ.

---

[1] All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

CityDeck asks this court to exercise its superintending constitutional authority to vacate the circuit court's[2] order. CityDeck asserts the circuit court exceeded its jurisdiction by putting the private arbitration[3] on hold, and that a supervisory writ is necessary to correct the circuit court's extra-jurisdictional act. We hold the circuit court lacked the authority to issue the order staying the arbitration, the requirements necessary to issue a supervisory writ have been satisfied, and the stay order must be vacated.

## I. BACKGROUND

¶2 In December 2013, CityDeck hired Smet Construction Services Corporation as its general contractor to construct an apartment building called "CityDeck Residences" in Green Bay. Smet hired subcontractors, including GB Builders of Northeastern Wisconsin, LLC; Lunda Construction Company; Security-Luebke Roofing, Inc.; and Lakeland Construction, Inc. The construction contract required any disputes to be resolved by arbitration. A dispute arose and in May 2016, CityDeck filed for arbitration against Smet, alleging breach of the construction contract and theft by contractor. It filed an amended demand for arbitration in November 2016. In July 2017, Smet sought to bring the subcontractors into the arbitration because it contended the

_____

[2] Brown County Circuit Court, Thomas J. Walsh, Judge.

[3] The parties independently initiated the arbitration in this case pursuant to a private contract, without involvement by the court system.

2

subcontractors were responsible for the problems and each of the subcontracts contained an indemnity provision requiring the subcontractor to "defend, indemnify and hold [Smet] harmless." Most of the subcontractors voluntarily joined the arbitration. GB Builders notified its insurer, Society Insurance, of the claim, and Society hired an attorney to represent GB Builders under a reservation of rights. In August 2017, Smet tendered the defense of the CityDeck claim to Society, asserting it was an additional insured under the insurance policy Society issued to GB Builders. In October 2017, GB Builders filed an answer to Smet's demand for arbitration, asking the arbitrator for dismissal. The arbitrator scheduled the arbitration hearing for March 1, 2018.

¶3 In October 2017, however, Society Insurance filed a declaratory judgment complaint in Brown County Circuit Court against CityDeck, Smet, and GB Builders. Society sought a declaration "on the scope of its insurance duties" to Smet and GB Builders with respect to CityDeck's construction claims under arbitration. Society asked the circuit court to stay the arbitration until it could decide the insurance coverage issue. The circuit court granted Society's request and ordered the arbitration stayed on January 2, 2018.

¶4 CityDeck asserted the circuit court lacked jurisdiction to order a private arbitration stayed, particularly when the circuit court action and the arbitration involved different issues and different parties; three subcontractors who were parties to the arbitration were not named in the circuit

3

court suit. CityDeck filed a motion asking the circuit court to reconsider its decision. The circuit court ignored CityDeck's motion to reconsider, and CityDeck filed a petition for a supervisory writ in the court of appeals. The court of appeals construed the petition as an appeal from a non-final order and denied the petition. CityDeck filed a petition for a supervisory writ with this court. We accepted jurisdiction over CityDeck's petition and heard oral argument.

## II. ANALYSIS

### A. Historical Analysis

¶5 Wisconsin cases contain inconsistencies regarding writ procedure, terminology, and the standards applicable to the exercise of our constitutional superintending authority. For the sake of clarity, we set forth the history of writs requested under our superintending authority, the origin of the term "supervisory writ," and an unexplained discrepancy in our cases illuminated in State ex rel. Beaudry v. Panosian, 35 Wis. 2d 418, 151 N.W.2d 48 (1967).

### 1. History of writ procedure

¶6 Article VII, § 3 of the Wisconsin Constitution gives the supreme court "superintending and administrative authority over all courts" and the ability to "issue all writs necessary

in aid of its jurisdiction."[4] Interpreting this provision, this court held that "[the supreme court] was endowed with a separate and independent jurisdiction, which enables and requires it in a proper case to control the course of ordinary litigation in such inferior courts, and was also endowed with all the common-law writs applicable to that jurisdiction." State ex rel. Fourth Nat'l Bank of Phila. v. Johnson, 103 Wis. 591, 613, 79 N.W. 1081 (1899). This court concluded that "when the makers of the constitution used the words 'superintending control over all inferior courts' they definitely referred to that well-known superintending jurisdiction of the court of king's bench." Id. at 614. "The two great writs by which this superintending jurisdiction was principally exercised by the court of King's bench were the writs of mandamus and prohibition; the one directing action by the inferior court, and the other forbidding action." Id.

¶7 A writ of prohibition "restrain[s] a court in the exercise of judicial functions outside or beyond its jurisdiction, and when there is no other adequate remedy." State ex rel. Attorney Gen. v. Circuit Court of Eau Claire Cty.,

---

[4] In 1899, the provision read, in relevant part, "The supreme court shall have a general superintending control over all inferior courts; it shall have power to issue writs of habeas corpus, mandamus, injunction, quo warranto, certiorari, and other original and remedial writs, and to hear and determine the same." State ex rel. Fourth Nat'l Bank of Phila. v. Johnson, 103 Wis. 591, 610, 79 N.W. 1081 (1899) (emphasis omitted).

5

97 Wis. 1, 15, 72 N.W. 193 (1897). See also State ex rel. De Puy v. Evans, 88 Wis. 255, 263, 60 N.W. 433 (1894) ("So this court has repeatedly held that under our statutes such writ issues only to restrain the acts of a court or other inferior tribunal exercising some judicial power which it has no legal authority to exercise at all."); State ex rel. Kellogg v. Gary, 33 Wis. 93, 98 (1873) ("It does not issue to restrain the acts of either executive or administrative officers, but only those of a court or other inferior tribunal engaged in the exercise of some judicial power, and that not merely in a manner not authorized by law, but it must also be in defiance of law, or without any legal authority whatever for that purpose.").

¶8 Prior to 1921, it was the rule in Wisconsin "that prohibition will not lie against a judge of a lower court except in a situation where such judge is exceeding his jurisdiction." State ex rel. Kiekhaefer v. Anderson, 4 Wis. 2d 485, 490, 90 N.W.2d 790 (1958). However, the rule changed so that "prohibition may be invoked in case of a non-jurisdictional error in a situation where appeal from the judgment would come too late for effective redress and great hardship would result if such writ were not issued." Id. See also In re Inland Steel Co., 174 Wis. 140, 143, 182 N.W. 917 (1921) ("[I]t is the opinion of the court that jurisdiction may properly be exercised though the duty of the court below may not be so plain as to permit of but one conclusion, if a careful consideration of all the facts shows that a valid service has not been made."); State ex rel. Hustisford Light, Power & Mfg. Co. v. Grimm, 208 Wis.

6

366, 370, 243 N.W. 763 (1932) ("Neither the power nor the exercise of it as a matter of policy is limited to keeping the lower court within its jurisdiction or compelling it to act."); State ex rel. Gaynon v. Krueger, 31 Wis. 2d 609, 614, 143 N.W.2d 437 (1966) ("Traditionally, this writ was used to keep an inferior court from acting outside its jurisdiction when there was no adequate remedy by appeal or otherwise. But, . . . the writ has been expanded to cover cases of 'nonjurisdictional error when the appeal may come too late for effective redress, or be inadequate and there is a need for such intervention to avoid grave hardship or a complete denial of the rights of a litigant.'") (internal citations and quoted source omitted).

¶9  In Fourth National Bank, this court acknowledged it granted a writ of prohibition in Attorney General, to prevent "the further prosecution of certain contempt proceedings in the circuit court because such court was acting in excess of its jurisdiction." Fourth Nat'l Bank, 103 Wis. at 617. This court explained in Attorney General: "Having held that the attempt to punish the publication in question as contempt was in excess of the jurisdiction of the circuit court, no reason is seen why the writ is not an apt and proper remedy, unless, indeed, there be other adequate remedies." Attorney Gen., 97 Wis. at 15. The court proceeded to rule out the use of other writs and concluded that a writ of prohibition was appropriate. Id.

¶10 While Fourth National Bank explained the court's superintending power, it specifically dealt with the issuance of a writ of mandamus. 103 Wis. at 618. The court stated that

7

"unless there be adequate remedy for such denial in the regular exercise of the appellate jurisdiction of this court, it is difficult to see why the superintending jurisdiction should not be exercised to quash the neglect or refusal of the circuit court, and compel it to act within its jurisdiction." Id. at 621.

¶11 In addition, Fourth National Bank created several principles for issuing a writ of mandamus. First, "[t]he general rule of law undoubtedly is that mandamus will not lie where there is a remedy by appeal or writ of error. But the remedy by appeal must be substantially adequate in order to prevent relief by mandamus." Id. at 622 (internal citations omitted). Second, "[i]t is very plain that, if the creditors are to exercise their rights with any prospect of benefit, they must exercise them promptly." Id. Third, "reliance is placed upon the well-known principle that mandamus will not lie to control the exercise of discretion." Id. Fourth, "[w]here it clearly appears that discretion has been not merely abused, but not exercised at all, or that the action taken by the inferior court is without semblance of legal cause, and no other adequate remedy exists, mandamus will lie to compel the specific action which should have been taken." Id. at 623. Fifth, "[t]he duty of the court must be plain, the refusal to proceed within its jurisdiction to perform that duty must be clear, the results of such refusal prejudicial, the remedy, if any, by appeal or writ of error utterly inadequate, and the application for relief by

8

mandamus speedy and prompt, in order to justify the issuance of the writ." Id. at 623-24.

¶12 It appears, however, that the requirements outlined in Fourth National Bank for a writ of mandamus became requirements for all writs issued under the court's supervisory powers. In 1907, in a mandamus case, the court wrote that it would apply its supervisory control only "where the duty of the inferior court to act within its jurisdiction or to refrain from going beyond its jurisdiction is plain and imperative, where such court threatens to violate that duty to the substantial prejudice of the rights of the petitioner, where all other remedies are inadequate, and the application for relief [is] prompt." State ex rel. Milwaukee Elec. Ry. & Light Co. v. Circuit Court for Rock Cty., 133 Wis. 442, 444, 113 N.W. 722 (1907) (citing Fourth Nat'l Bank). That case, Fourth National Bank, and two other mandamus cases,[5] were then cited in State ex rel. Pierce-Arrow Motor Car Co. v. Circuit Court of Milwaukee Cty., 143 Wis. 282, 127 N.W. 998 (1910), as principles for exercising general superintending control. The court stated:

> Those principles in substance are that this [superintending] jurisdiction is not to be exercised upon light occasion, but only upon some grave exigency; that the writs by which it is exercised will not be used to perform the ordinary functions of an appeal or writ of error; that the duty of the court below must be plain; its refusal to proceed within the

---

[5] State ex rel. City of Milwaukee v. Ludwig, 106 Wis. 226, 82 N.W. 158 (1900); State ex rel. Umbreit v. Helms, 136 Wis. 432, 118 N.W. 158 (1908).

9

line of such duty, or, on the other hand, its intent to proceed in violation of such duty must be clear; the results must be not only prejudicial, but must involve extraordinary hardship; the remedy by appeal or writ of error must be utterly inadequate; and the application for the exercise of the power of superintending control must be speedy and prompt.

Id. at 285. Pierce-Arrow, however, was a prohibition case——not a mandamus case.

¶13 Nonetheless, the principles outlined in Pierce-Arrow were reiterated in a later prohibition case, State ex rel. Pabst v. Circuit Court for Milwaukee Cty., 184 Wis. 301, 304, 199 N.W. 213 (1924). However, that court went on to apply only some of the Pierce-Arrow principles, stating "[i]f the duty of the circuit court to abate the action against the Pabst Brewing Company were clear, and the relator did suffer extraordinary hardship by reason of the court's failure to perform its duty, and if he had no other adequate remedy, the duty of this court to assume jurisdiction is well settled." Id. Notably, the court did not address the factor requiring that "the application for the exercise of the power of superintending control must be speedy and prompt."

¶14 Likewise, other cases did not uniformly or consistently apply the Pierce-Arrow principles. Some cases utilized only two. First, "[i]n order to entitle a party to a writ of prohibition, the results of the error attacked must not only be prejudicial to him but must [also] involve extraordinary hardship." Kiekhaefer, 4 Wis. 2d at 490 (emphasis omitted) (citing Pierce-Arrow). Second, "[i]t is a further well established principle that prohibition will not lie where there

10

is an adequate remedy by appeal." Id. at 491. See also State ex rel. Mitchell v. Superior Court of Dane Cty., 14 Wis. 2d 77, 81, 109 N.W.2d 522 (1961) ("Ordinarily such a writ should be issued only to prevent an inferior court from exercising jurisdiction in a case where i[t] should not be exercised or assumed. Nor should a writ of prohibition be issued if there is an adequate remedy by way of appeal, except where great hardship would result.") (internal citations omitted). However, other cases referenced all of the principles from Pierce-Arrow. For example, in State ex rel. Beaudry v. Panosian, the court cited Pierce-Arrow and affirmed a motion to quash a petition for a writ of prohibition because "from this record it cannot be said that the justice court's 'duty' to refrain from exercising jurisdiction was plain." Beaudry, 35 Wis. 2d at 425-26; see also State ex rel. Lang v. Municipal Justice Court of Cudahy, 50 Wis. 2d 21, 23-24, 183 N.W.2d 43 (1971) (citing Pierce-Arrow); State ex rel. Prentice v. Cty. Court, Milwaukee Cty., 70 Wis. 2d 230, 234-35, 234 N.W.2d 283 (1975) (citing Pierce Arrow and Beaudry).

¶15 Eventually, the principles developed in Pierce-Arrow and cited in Beaudry merged into a four-factor test:

A petition for a supervisory writ will not be granted unless: (1) an appeal is an inadequate remedy; (2) grave hardship or irreparable harm will result; (3) the duty of the trial court is plain and it must have acted or intends to act in violation of that duty[;] and (4) the request for relief is made promptly and speedily.

State ex rel. Oman v. Hunkins, 120 Wis. 2d 86, 91, 352 N.W.2d 220 (Ct. App. 1984) (citing Beaudry). This court subsequently endorsed these four factors, and routinely applies them whenever a party petitions for a supervisory writ. See Burnett v. Alt, 224 Wis. 2d 72, 96-97, 589 N.W.2d 21 (1999); State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶17, 271 Wis. 2d 633, 681 N.W.2d 110; DNR v. Wis. Court of Appeals, Dist. IV., 2018 WI 25, ¶9, 380 Wis. 2d 354, 909 N.W.2d 114. This was not always the case.

¶16 Before adoption of the modern four-factor test, Wis. Stat. ch. 817 (1975-76) provided guidance for writs of errors and appeals. Parties asking the supreme court to exercise its superintending authority did so via an application or a petition for a particular writ——typically a writ of mandamus or a writ of prohibition. In 1978, the typical practice changed when Wisconsin revamped its court system, adding the intermediate appellate court——the Wisconsin Court of Appeals. The newly revised appellate court structure required revisions to appellate rules. The Judicial Council drafted new rules of appellate procedure, which this court enacted. Sup. Ct. Order, 83 Wis. 2d xxvii (1978). Two Rules, 809.51 and 809.71, created procedural and filing guidance regarding writ practice in the appellate courts. Rule 809.51 applied to the newly-created court of appeals, and Rule 809.71 applied to this court. Both Rules were titled "Supervisory Writ" although this term did not appear in the text of the original statutes. See Wis. Stat. §§ (Rules) 809.51 & 809.71 (1977-78).

12

¶17 The text of the court of appeals' rule said: "A person may request the court to exercise its supervisory jurisdiction over a court . . . by filing a petition and supporting memorandum." The text of the supreme court rule said: "A person may request the supreme court to exercise its supervisory jurisdiction . . . by filing a petition in accordance with Rule 809.51." The term "supervisory writ" does appear in the second sentence of our current Rule 809.71: "A person seeking a supervisory writ from the supreme court shall first file a petition for a supervisory writ in the court of appeals[,]" but the term still does not appear in the text of Rule 809.51.[6]

---

[6] The full text of current Wis. Stat. §§ (Rules) 809.51 and 809.71 provides:

809.51 Rule (Supervisory writ and original jurisdiction to issue prerogative writ).

(1) A person may request the court to exercise its supervisory jurisdiction or its original jurisdiction to issue a prerogative writ over a court and the presiding judge, or other person or body, by filing a petition and supporting memorandum. The petition and memorandum combined may not exceed 35 pages if a monospaced font is used or 8,000 words if a proportional serif font is used. The petitioner shall name as respondents the court and judge, or other person or body, and all other parties in the action or proceeding. The petition shall contain:

(a) A statement of the issues presented by the controversy;

(b) A statement of the facts necessary to an understanding of the issues;

(c) The relief sought; and

(continued)

13

(d) The reasons why the court should take jurisdiction.

(2) The court may deny the petition ex parte or may order the respondents to file a response with a supporting memorandum, if any, and may order oral argument on the merits of the petition. The response and memorandum combined may not exceed 35 pages if a monospaced font is used or 8,000 words if a proportional serif font is used. The respondents shall respond with supporting memorandum within 14 days after service of the order. A respondent may file a letter stating that he or she does not intend to file a response, but the petition is not thereby admitted.

(3) The court, upon a consideration of the petition, responses, supporting memoranda and argument, may grant or deny the petition or order such additional proceedings as it considers appropriate. Costs and fees may be awarded against any party in a writ proceeding.

(4) A person filing a petition under this section shall append to the petition a statement identifying whether the petition is produced with a monospaced font or with a proportional serif font. If produced with a proportional serif font, the person shall set forth the word count of the petition.

809.71 Rule (Supervisory writ). A person may request the supreme court to exercise its supervisory jurisdiction over a court and the judge presiding therein or other person or body by filing a petition in accordance with s. 809.51. A person seeking a supervisory writ from the supreme court shall first file a petition for a supervisory writ in the court of appeals under s. 809.51 unless it is impractical to seek the writ in the court of appeals. A petition in the supreme court shall show why it was impractical to seek the writ in the court of appeals or, if a petition had been filed in the court of appeals, the disposition made and reasons given by the court of appeals.

14

¶18 With the introduction of the term "supervisory writ" via the new appellate rules, post-1978 cases attempted to draw from both the old, existing terminology and the new rules. The term "supervisory writ" appears for the first time in Wisconsin cases in State v. Whitty, 86 Wis. 2d 380, 385, 272 N.W.2d 842 (1978), which references Wis. Stat. §§ (Rules) 809.51 and 809.71. Six years later, the current four-factor "supervisory writ" test was explicitly declared in a 1984 court of appeals' per curiam opinion in Oman, 120 Wis. 2d at 91. Oman lists the test with a citation to Beaudry. Beaudry, as noted, does not explicitly denominate a four-factor test, but instead cites to the general principles set forth in Pierce-Arrow.

¶19 Dissecting the relevant paragraph in Pierce-Arrow results in a list of seven factors guiding the exercise of superintending authority:

(1) This jurisdiction is not to be exercised upon light occasion, but only upon some grave exigency;

(2) The writs by which it is exercised will not be used to perform the ordinary functions of an appeal or writ of error;

(3) The duty of the court below must be plain;

(4) Its refusal to proceed within the line of such duty or, on the other hand, its intent to proceed in violation of such duty must be clear;

(5) The results must be not only prejudicial but must involve extraordinary hardship;

(6) The remedy by appeal or writ of error must be utterly inadequate;

(7) The application for the exercise of the power of superintending control must be speedy and prompt.

15

Pierce-Arrow, 143 Wis. at 285.

¶20  While the Oman court did not say how it arrived at the four factors, it likely condensed these seven principles into four factors given their overlap:

(1) An appeal is an inadequate remedy (see #2 and #6 of Pierce-Arrow);

(2) Grave hardship or irreparable harm will result (see #1 and #5 of Pierce-Arrow);

(3) The duty of the trial court is plain and the court must have acted or intend to act in violation of that duty (see #3 and #4 of Pierce-Arrow);

(4) The request for relief is made promptly and speedily (see #7 of Pierce-Arrow).

¶21 Alternatively, because the party in Oman sought two writs——a writ of mandamus and a writ of prohibition——the Oman court may have applied factors derived from each of the tests tied to those writs, respectively. Mandamus requires:  "(1) a clear legal right; (2) a plain and positive duty; (3) substantial damages or injury should the relief not be granted, and (4) no other adequate remedy at law." Oman, 120 Wis. 2d at 88 (citing Law Enf't Standards Bd. v. Village of Lyndon Station, 101 Wis. 2d 472, 493-94, 305 N.W.2d 89 (1981), which actually lists two additional factors not mentioned, including "no laches" and "no special reasons" making the remedy "inequitable.").

¶22 As Wisconsin appellate courts grappled with the language of the older cases, together with the post-1978 body of cases, profuse variations of both terminology and tests appeared

16

in our modern writ cases. Cases sometimes referred to "supervisory writs" and sometimes referred to a specific common law writ. Some courts combined the old and new terminology into "supervisory writ of prohibition." See State ex rel. Godfrey & Kahn, S.C. v. Circuit Court for Milwaukee Cty., 2012 WI App 120, ¶¶48-50, 344 Wis. 2d 610, 823 N.W.2d 816 (granting a "supervisory writ of prohibition" after applying four-factor test because trial judge exceeded authority); State ex rel. Individual Subpoenaed to Appear at Waukesha Cty. v. Davis, 2005 WI 70, 281 Wis. 2d 431, 697 N.W.2d 803 (court granted a "writ of prohibition," but did not apply four-factor test); State ex rel. Garibay v. Circuit Court for Kenosha Cty., 2002 WI App 164, ¶2, 256 Wis. 2d 438, 647 N.W.2d 455 (denied petition for "supervisory writ.").

¶23 Attempting to define "supervisory writ," the court of appeals described it as "a blending of the writ of mandamus and the writ of prohibition." State ex rel. Dressler v. Circuit Court for Racine Cty., 163 Wis. 2d 622, 630, 472 N.W.2d 532 (Ct. App. 1991) (citing Oman). This court likewise adopted this definition. See Madison Metro. Sch. Dist. v. Circuit Court for Dane Cty., 2011 WI 72, ¶74, 336 Wis. 2d 95, 800 N.W.2d 442; DNR, 380 Wis. 2d 354, ¶8. Nevertheless, courts continued to distinguish between writs of prohibition and writs of mandamus. See Madison Metro. Sch. Dist., 336 Wis. 2d 95, ¶¶1, 75-76. This historical review reveals inconsistencies in writ law and the standards governing our exercise of superintending authority.

17

## 2. Supervisory Writ

¶24 With the introduction of the term "supervisory writ" in 1978, our cases became less clear. The cases are silent as to whether the "supervisory writ" was an intentional invention or resulted fortuitously from the title the Judicial Council drafters chose for Rules 809.51 and 809.71. It is also unclear whether a supervisory writ existed as an independent writ under which this court exercised its superintending authority or whether it was simply a generic term providing the mechanism by which parties reached the appellate courts when seeking the exercise of supervisory (court of appeals) or superintending (supreme court) authority.

¶25 Notably, just last term, in DNR, we referenced an 1874 case empowering this court to use both the traditional common law writs when exercising superintending jurisdiction or "devise" any new writs we might deem necessary:

> We have previously observed that with the grant of [art. VII, § 3 superintending] jurisdiction [over all courts] come all the writs necessary to give it effect:
>
> > The framers of the constitution appear to have well understood that, with appellate jurisdiction, the court took all common law writs applicable to it; and with superintending control, all common law writs applicable to that; and that, failing adequate common law writs, the court might well devise new ones, as Lord Coke tells us, as "a secret in law."
>
> Attorney Gen. v. Chicago & N.W. Ry. Co., 35 Wis. 425, 515 (1874) (construing our original constitution); see State v. Buchanan, 2013 WI 31, ¶11, 346 Wis. 2d 735, 828 N.W.2d 847 ("As the court of original

18

jurisdiction, we have discretion to issue a supervisory writ.").

DNR, 380 Wis. 2d 354, ¶7 (footnote omitted).

¶26 This suggests our "supervisory writ" may in fact be a new writ devised to exercise our superintending constitutional authority. But, the term "supervisory writ" also bears a second meaning. Since its appearance in 1978, a supervisory writ is commonly known as the general term used when petitioning Wisconsin appellate courts under Rules 809.51 and 809.71. This terminology, regardless of whether it entered the law intentionally or fortuitously, is firmly entrenched in our jurisprudence, and we have never explained or addressed its purpose or presence. This historical analysis does not provide clear answers, but the court takes this opportunity to clarify and acknowledge the dual purpose of the term supervisory writ. It is both: (1) the general term used in petitioning the court of appeals to exercise its constitutional supervisory authority[7] and in petitioning this court to exercise its constitutional

---

[7] Article VII, § 5 of the Wisconsin Constitution gives the court of appeals "supervisory authority":

> (3) The appeals court shall have such appellate jurisdiction in the district, including jurisdiction to review administrative proceedings, as the legislature may provide by law, but shall have no original jurisdiction other than by prerogative writ. The appeals court may issue all writs necessary in aid of its jurisdiction and shall have supervisory authority over all actions and proceedings in the courts in the district.

superintending authority;[8] and (2) a new writ this court devised independent of the traditional common law writs.

### 3. _Beaudry_'s jurisdictional distinction

¶27 Our last consideration in this historical analysis addresses the unexplained discrepancy in our case law illuminated in _State ex rel. Beaudry v. Panosian_, 35 Wis. 2d 418, 151 N.W.2d 48 (1967). _Beaudry_ makes a distinction between jurisdictional and non-jurisdictional cases requesting the exercise of this court's superintending authority.[9] The court in _Beaudry_ recognized that this court's constitutional superintending authority includes "the power to issue writs prohibiting inferior courts from acting outside their jurisdiction" and explained that "[t]raditionally, this writ was used to keep an inferior court from acting outside its jurisdiction when there was no adequate remedy by appeal or otherwise" but the "use of the writ to prohibit action by inferior courts and tribunals in cases of nonjurisdictional error" was historically limited to situations "where 'the appeal

---

[8] The term "supervisory" is used in both Wis. Stat. § (Rule) 809.51 (court of appeals) and Wis. Stat. § (Rule) 809.71 (supreme court), but the Wisconsin Constitution uses the term "supervisory authority" with respect to the court of appeals and the term "superintending authority" with respect to this court.

[9] _State ex rel. Beaudry v. Panosian_, 35 Wis. 2d 418, 151 N.W.2d 48 (1967), was not the only case to recognize the distinction. _State ex rel. Kiekhaefer v. Anderson_, 4 Wis. 2d 485, 490, 90 N.W.2d 790 (1958) and _State ex rel. Gaynon v. Krueger_, 31 Wis. 2d 609, 614, 143 N.W.2d 437 (1966) similarly acknowledge a jurisdictional and non-jurisdictional distinction.

may come too late for effective redress, or be inadequate and there is a need for such intervention to avoid grave hardship or a complete denial of the rights of a litigant.'" Id. at 421-22 (quoted source omitted). Beaudry, at least implicitly, suggested a lesser burden to secure superintending assistance from this court when addressing a jurisdictional error and a greater burden when the case presents a non-jurisdictional error. This makes sense, of course, because non-jurisdictional errors are more likely to be remedied through the normal appeal process than purely jurisdictional errors, as this case illustrates well. Indeed, as recently as 2005, this court dispensed with the four-factor supervisory writ test in Davis, 281 Wis. 2d 431, ¶17, holding that "the requested writ of prohibition will issue if the John Doe judge acted in excess of his powers." In that case, the court concluded "a John Doe judge does not have statutory or inherent power to require a witness's counsel to take an oath of secrecy" and on that basis alone granted the writ of prohibition. Id., ¶¶32-34. Despite this distinction, this court largely ignored any substantive differences between jurisdictional and non-jurisdictional errors post-Beaudry and continued to blur the general principles involved in the writ cases.

¶28 Although Beaudry has never been overruled, it appears time, lack of precision, and perhaps the commonplace use of the supervisory writ has eroded any distinction between jurisdictional and non-jurisdictional categories of error. Parties seeking a supervisory writ——regardless of which category

21

of error——must satisfy the four-criteria supervisory writ test. This test is well-known, easy to apply, and firmly entrenched in Wisconsin law.

## B. Application

¶29 This court's authority to issue a supervisory writ arises from the constitutional grant of jurisdiction in Article VII, § 3 of the Wisconsin Constitution, which provides:

> (1) The supreme court shall have superintending and administrative authority over all courts.
>
> (2) The supreme court has appellate jurisdiction over all courts and may hear original actions and proceedings. The supreme court may issue all writs necessary in aid of its jurisdiction.
>
> (3) The supreme court may review judgments and orders of the court of appeals, may remove cases from the court of appeals and may accept cases on certification by the court of appeals.

We do not exercise this authority lightly; instead, we reserve this jurisdiction for extraordinary circumstances. See DNR, 380 Wis. 2d 354, ¶8; Dressler, 163 Wis. 2d at 630.

¶30 A party seeking the issuance of a supervisory writ must establish four factors: (1) a circuit court had a plain duty and either acted or intends to act in violation of that duty; (2) "an appeal is an inadequate remedy;" (3) "grave hardship or irreparable harm will result;" and (4) the party requested relief "promptly and speedily." DNR, 380 Wis. 2d 354, ¶9 (quoting Kalal, 271 Wis. 2d 633, ¶17).

¶31 In deciding whether to grant the writ requested by CityDeck, we consider the four criteria in turn. First, there

22

must be a plain duty violated by the Brown County Circuit Court——in this case, the duty to refrain from exercising jurisdiction over a private arbitration with which it had no authority to interfere. We conclude the circuit court had a plain duty to act within its jurisdiction and a concomitant duty to refrain from acting beyond it.

¶32 Article VII, § 8 of the Wisconsin Constitution confers broad jurisdiction on Wisconsin circuit courts to hear "all matters civil and criminal within this state," but not without exception:

> Except as otherwise provided by law, the circuit court shall have original jurisdiction in all matters civil and criminal within this state and such appellate jurisdiction in the circuit as the legislature may prescribe by law. The circuit court may issue all writs necessary in aid of its jurisdiction.

(Emphasis added.) The Wisconsin Arbitration Act, Wis. Stat. ch. 788, comprises one constitutionally-permissible exception to a circuit court's original jurisdiction:

> A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part of the contract, or an agreement in writing between 2 or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable and enforceable except upon such grounds as exist at law or in equity for the revocation of any contract.

Wis. Stat. § 788.01. In this Act, the Wisconsin legislature recognizes the freedom of persons to agree to resolve their disputes outside of the state's court system, via arbitration.

23

¶33 A circuit court possesses only limited, statutorily enumerated powers with respect to a private arbitration. See Midwest Neurosciences Assocs. v. Great Lakes Neurosurgical Assocs., LLC, 2018 WI 112, ¶¶47-49, 384 Wis. 2d 669, 920 N.W.2d 767. Nothing in the Wisconsin Arbitration Act permits a circuit court to stay or otherwise intermeddle with a private arbitration proceeding. A fundamental canon of statutory construction provides that "[n]othing is to be added to what the text states or reasonably implies[.]" Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 93 (2012); see also Dawson v. Town of Jackson, 2011 WI 77, ¶42, 336 Wis. 2d 318, 801 N.W.2d 316 ("We decline to read into the statute words the legislature did not see fit to write."). By specifying particular powers of a circuit court to act with respect to an arbitration proceeding, the legislature has circumscribed the authority of the circuit court, which may not arrogate to itself any additional powers.

¶34 A circuit court's role in arbitration is restricted because parties who contract for arbitration do so to avoid the court system altogether. Borst v. Allstate Ins. Co., 2006 WI 70, ¶61, 291 Wis. 2d 361, 717 N.W.2d 42 ("[T]he goal of arbitration is 'to resolve the entire controversy out of court without the formality and expense that normally attaches to the judicial process.'" (quoted source and emphasis omitted)); Midwest Neurosciences Assocs., LLC, 384 Wis. 2d 669, ¶41 ("When parties agree to arbitration, a court's role is limited because a different forum of dispute resolution has been selected.").

24

¶35 Arbitration is a matter of contract between private parties who enjoy that freedom. McAdams v. Marquette Univ., 2018 WI 88, ¶25, 383 Wis. 2d 358, 914 N.W.2d 708; Parsons v. Associated Banc-Corp, 2017 WI 37, ¶31, 374 Wis. 2d 513, 893 N.W.2d 212 ("Wisconsin courts have long recognized the importance of freedom of contract and have endeavored to protect the right to contract." (quoted source omitted)). The circuit court has no authority to halt a contractually agreed upon arbitration. Consistent with Wisconsin's arbitration statute, the circuit court may act only to ensure the parties who contracted for arbitration abide by their contractual agreement. See generally First Weber Grp., Inc. v. Synergy Real Estate Grp., LLC, 2015 WI 34, ¶¶30-31, 361 Wis. 2d 496, 860 N.W.2d 498 ("The legislature has determined that the courts have a limited role in the context of arbitration."); Midwest Neurosciences Assocs., LLC, 384 Wis. 2d 669, ¶77 ("Courts should remain mindful of the limited role endowed to them under chapter 788 and not endeavor into the province of the parties' contractual choice to arbitrate.").

¶36 Nothing in the statutes or the cases authorizes a circuit court to halt a private arbitration so that an insurance company can litigate whether its policy provides coverage to an insured. Although Wisconsin cases do allow insurance companies to bifurcate coverage from liability when both coverage and liability are being decided in the courts, see, e.g., Newhouse by Skow v. Citizens Sec. Mut. Ins. Co., 176 Wis. 2d 824, 836, 501 N.W.2d 1 (1993), no legal authority confers on a circuit

25

court the power to interfere with a liability claim when the parties have contracted to resolve it in arbitration. An insurer may file a declaratory judgment action seeking a coverage determination when the insurer has not been named as a party in a lawsuit involving its insured, see, e.g., Fire Ins. Exch. v. Basten, 202 Wis. 2d 74, 78, 549 N.W.2d 690 (1996), but the declaratory judgment statute does not authorize a circuit court to obstruct a scheduled arbitration over the liability claims pending the circuit court's coverage determination.

¶37 Society suggests American Family Mut. Ins. Co. v. American Girl, Inc., 2004 WI 2, 268 Wis. 2d 16, 673 N.W.2d 65 and Delta Group, Inc. v. DBI, Inc., 204 Wis. 2d 515, 555 N.W.2d 162 (Ct. App. 1996), authorize a circuit court to stay a private arbitration. We disagree. In American Girl, the circuit court did not order a stay of the arbitration. Rather, the insurer intervened in the arbitration and asked the arbitrator to stay the arbitration until coverage could be determined. 268 Wis. 2d 16, ¶109 (Roggensack, J., dissenting). Society's reliance on American Girl is inapposite. The same is true for its reliance on Delta Group. In that case, the parties filed suit in court and then agreed to stay the court case to allow for mediation and arbitration. Delta Group, 204 Wis. 2d at 519. The court of appeals decided the insurer breached its duty to defend its insured and was therefore obligated to pay the arbitration award. Id. at 525-26. The insurer had denied the claim entirely and never sought a coverage determination. Id. Although Delta Group reiterates

26

general rules about bifurcation and an insurer's duty to resolve coverage disputes, it does not establish a circuit court's authority to stay a private arbitration.

¶38 We conclude the circuit court violated its plain duty when it stepped outside its original jurisdiction under Article VII, § 8 of the Wisconsin Constitution by issuing an order it had no authority to make. The circuit court compounded its error by stopping an arbitration proceeding involving three parties who were not participating in the court case at all and therefore had no opportunity to be heard on an order that affected their rights. Accordingly, the first criterion for a supervisory writ is met.

¶39 The second criterion for granting a supervisory writ requires a showing that CityDeck cannot receive an adequate remedy through the ordinary appeal process. This criterion is also met. Here, the circuit court acted beyond its original jurisdiction under Article VII, § 8 of the Wisconsin Constitution and halted a private arbitration to decide a separate coverage issue in the circuit court involving different parties. There is no adequate appellate remedy for the circuit court's unlawful act because any "appeal comes too late for effective redress" and the damage——stopping the parties from resolving their dispute in arbitration——is not reparable or compensable. See DNR, 380 Wis. 2d 354, ¶41 (quoted source omitted). Challenging the circuit court's exercise of power via a regular appeal would be futile. CityDeck would have to wait until the coverage issue was resolved before it could appeal and

27

ask an appellate court to declare the circuit court had no authority to stay the arbitration. At that point, the wrongful exercise of authority over the arbitration either becomes moot if the circuit court allows the arbitration to proceed during the appeal, or if the circuit court continues the stay pending the appeal, CityDeck continues to be wrongly subjected to the circuit court's exercise of authority it lacks. Either way, a regular appeal is inadequate as it comes "too late for effective redress." Id. (quoted source omitted).

¶40 Significantly, the appeal process continues to subject the parties to the court system for resolving their dispute, effectively trampling their agreement to avoid court altogether. Rather than serving as a vehicle for vindicating a party's rights, the appeal exacerbates the injury. The damage is done and cannot be reversed.

¶41 Third, we consider whether grave hardship or irreparable harm will result if we do not issue the supervisory writ. We conclude that it would. A litigant's right to be free from the exercise of the court's power has been completely denied. The circuit court's unlawful stay order halted attempts by these private parties to resolve a construction dispute in their contractually-selected forum of arbitration. CityDeck was deprived of the benefits of its bargained-for method of dispute resolution: rather than avoiding the court system, it was subjected to an order issuing from it, and instead of its contractually agreed-upon arbitration progressing, it was indefinitely delayed by a court acting without authority.

28

Additionally, CityDeck was forced into public proceedings in a matter it had contracted to resolve privately. These factors satisfy the grave hardship/irreparable harm criterion.

¶42 Finally, CityDeck met the fourth criterion by acting promptly and speedily. Although Society asserts that the 21 days between the issuance of the unlawful stay order and CityDeck's writ filing is neither prompt nor speedy, we disagree. The circuit court issued the stay order on January 2, 2018. Two days later, on January 4, 2018, CityDeck filed a motion for reconsideration with the circuit court, which the circuit court ignored. On January 11, 2018, the circuit court issued an order giving the parties permission to proceed with a planned mediation. Twelve days after that order, CityDeck filed its writ petition in the court of appeals. This timeline satisfies the "prompt and speedy" criterion.

¶43 CityDeck's petition fulfills all four criteria for issuance of a supervisory writ; therefore, we grant CityDeck's request and vacate the circuit court's order staying the arbitration.

*By the Court.*—The petition for a supervisory writ is granted; the stay order is vacated.

¶44 REBECCA FRANK DALLET, J., withdrew from participation.

29

¶45 ANN WALSH BRADLEY, J. *(dissenting).* Until now, it has been well settled that a supervisory writ is intended to be "an extraordinary and drastic remedy[,]" reserved for rare situations involving "some grievous exigency." State ex rel. Kalal v. Circuit Ct. for Dane Cty., 2004 WI 58, ¶17, 271 Wis. 2d 633, 681 N.W.2d 110; see Matter of Civil Contempt of Kroll, 101 Wis. 2d 296, 304, 304 N.W.2d 175 (Ct. App. 1981) (denominating a supervisory writ an "extraordinary remed[y]"); State ex rel. Kenneth S. v. Circuit Ct. for Dane Cty., 2008 WI App 120, ¶8, 313 Wis. 2d 508, 756 N.W.2d 573 (referring to a supervisory writ as an "extraordinary and drastic remedy that is to be issued only upon some grievous exigency") (citation omitted).

¶46 Ignoring this admonishment, the majority greatly expands the application of our supervisory writ jurisprudence. Throwing caution to the wind, it elevates jurisdictional errors above all others as deserving of special treatment under Wisconsin's supervisory writ procedures.

¶47 In doing so, the majority pays lip service to the familiar and well-established four-factor test used to determine whether a supervisory writ is an appropriate remedy under the circumstances, but fails to apply it correctly. Adopting an argument that CityDeck did not make, the majority's result is that a supervisory writ, which is supposed to be reserved for the most "extraordinary" or "grievous" situations, may become commonplace.

1

¶48 In my view, CityDeck has not met a necessary prerequisite for the issuance of a supervisory writ. Mere delay in arbitration proceedings is not the type of "grave hardship" or "irreparable harm" that entitles a party to such a writ.

¶49 Accordingly, I respectfully dissent.

I

¶50 Although the majority spills a great deal of ink exploring the history of writ procedures in Wisconsin, it ultimately purports to reaffirm and apply the familiar and well-established four-factor test for determining whether a supervisory writ is an appropriate remedy under the circumstances.

¶51 As the majority correctly explains, "[a] party seeking the issuance of a supervisory writ must establish four factors: (1) a circuit court had a plain duty and either acted or intends to act in violation of that duty; (2) 'an appeal is an inadequate remedy;' (3) 'grave hardship or irreparable harm will result;' and (4) the party requested relief 'promptly and speedily.'" Majority op., ¶30 (citing DNR. v. Wis. Court of Appeals, Dist. IV, 2018 WI 25, ¶9, 380 Wis. 2d 354, 909 N.W.2d 114). If any one of these factors is not present, the writ must be denied. Kalal, 271 Wis. 2d 633, ¶17; see also State ex rel. Kiekhaefer v. Anderson, 4 Wis. 2d 485, 490, 90 N.W.2d 790 (1958) (explaining that where the "petition fails to allege any facts which disclose that he would suffer great hardship[,]" a writ of prohibition may not be granted).

2

¶52 I focus my analysis on the third supervisory writ factor: grave hardship or irreparable harm. The irreparable harm claimed by CityDeck is a simple delay in its arbitration proceedings. In my view, the fact that CityDeck's arbitration is delayed, without more, is insufficient to show grave hardship or irreparable harm.

¶53 The harm caused by any such delay is not similar to the harm suffered by parties that previously sought and obtained supervisory writs. In prior cases, the petitioner would have suffered a complete denial of a right in a way that could not be undone or remedied in the absence of a supervisory writ——that is, the "bells" in those cases could not be "unrung."

¶54 For example, courts have determined that the failure to substitute a judge when required by law constitutes irreparable harm. State ex rel. J.H. Findorff & Son, Inc. v. Circuit Ct. for Milwaukee Cty., 2000 WI 30, ¶37, 233 Wis. 2d 428, 608 N.W.2d 679 (2000); State ex rel. Laborers Int'l Union of N. Am., AFL-CIO v. Circuit Ct. for Kenosha Cty., 112 Wis. 2d 337, 342, 332 N.W.2d 832 (Ct. App. 1983); State ex rel. Oman v. Hunkins, 120 Wis. 2d 86, 91, 352 N.W.2d 220 (Ct. App. 1984). Similarly, the potential disclosure of information subject to the attorney-client privilege is irreparable harm sufficient to support the issuance of a supervisory writ. State ex rel. Godfrey & Kahn, S.C. v. Circuit Ct. for Milwaukee Cty., 2012 WI App 120, ¶52, 344 Wis. 2d 610, 823 N.W.2d 816 (Ct. App. 2012). Finally, in DNR, 380 Wis. 2d 354, ¶47, this court determined

3

that the failure to honor an appellant's statutory right to choice of venue constituted irreparable harm.

¶55 Ignoring this case law, CityDeck fails to make any persuasive argument that the delay caused by the circuit court's stay of the arbitration proceedings constitutes grave hardship or irreparable harm. CityDeck's "argument" with regard to this factor is tucked away in the very last paragraph of its 28-page brief-in-chief.[1]

¶56 It baldly asserts that, in the absence of a supervisory writ, it will incur unspecified "substantial damages for which there is no adequate remedy." CityDeck further complains that "[t]he inability to resolve the arbitration and the indefinite delay resulting from the Stay Order has already caused substantial damage to CityDeck's interests and will continue to do so until it is lifted."

¶57 In my view, CityDeck is not being denied its right to arbitrate its claims. Arbitration is merely delayed, not denied.[2] CityDeck loses no statutory right and it loses no contractual right.

¶58 What about the delay in the arbitration proceedings cannot be remedied with money, such as interest on CityDeck's

---

[1] CityDeck did not supplement its argument in its reply brief.

[2] This is an important distinction that is either lost on, or ignored by, the majority. See, e.g., majority op., ¶39 (characterizing the "damage" in the instant case as "stopping the parties from resolving their dispute in arbitration") (emphasis added).

4

judgment if it is successful in arbitration? Indeed, at oral argument, CityDeck asserted that "the irreparable harm is that we continue to lose money that we will not recover because of the delay associated with our arbitration proceedings." Exactly how will the loss of money from delay result in grave hardship or irreparable harm? CityDeck does not explain, so the majority conjures its own justification.

¶59 Putting on its advocacy hat, the majority sua sponte discovers a new type of irreparable harm. In the majority's broad view, CityDeck suffers irreparable harm by the delay of arbitration proceedings because "[a] litigant's right to be free from the exercise of the court's power has been completely denied." Majority op., ¶41.

¶60 If this is the thrust of the injury (i.e., being subject to a court's power despite that court's lack of jurisdiction), then the majority has short-circuited Wisconsin's supervisory writ procedure. It treats jurisdictional errors as a special class of errors for which the issuance of a supervisory writ appears to be all but a certainty.[3]

¶61 Following the majority's logic, would a defendant be entitled to a supervisory writ if a motion to dismiss for lack of subject matter jurisdiction was erroneously denied? See Richards v. Young, 150 Wis. 2d 549, 557, 441 N.W.2d 742 (1989)

---

[3] Although the majority expressly rejects the proposition that jurisdictional errors are treated differently under our writ procedure than non-jurisdictional errors, its analysis belies that assertion. See majority op., ¶27.

5

("This court has previously held that if the statutory requirements for obtaining judicial review are not fully complied with, the subject matter jurisdiction of the circuit court cannot be invoked.").

¶62 Is a supervisory writ to be employed whenever it is asserted that a circuit court exercised personal jurisdiction despite a fundamental defect in service? See Johnson v. Cintas Corp. No. 2, 2012 WI 31, ¶50, 339 Wis. 2d 493, 811 N.W.2d 756. Could a party turn to a supervisory writ to resolve a question of whether a juvenile court could exercise personal jurisdiction? See State v. Aufderhaar, 2005 WI 108, ¶27, 283 Wis. 2d 336, 700 N.W.2d 4.

¶63 It appears that in each of these situations, for the entirety of the case, the circuit court would be "stepp[ing] outside its original jurisdiction" and issuing orders "it ha[s] no authority to make" that would bind the defendant. See majority op., ¶38. Further, the ordinary appeals process will be inadequate because an appeal would always "come[] too late" to effectively redress the error. Id., ¶39 (quoted source omitted). The harm to the defendant would be considered irreparable because, for the duration of the case, the defendant would be "completely denied" the "right to be free from the exercise of the court's power." Id., ¶41.

¶64 If there is a principle under which the majority's analysis would not apply to all jurisdictional errors, that principle is well hidden. Such an expansion of the availability of supervisory writs is anathema to the limitations provided in

6

our supervisory writ jurisprudence. A supervisory writ should be a last resort, not a first option.

¶65 In sum, the majority has placed itself in the role of CityDeck's attorneys, relying on arguments not made in order to issue a writ to which CityDeck is not entitled. In doing so, the majority improperly elevates jurisdictional errors as a special class of errors that can always be redressed via a supervisory writ regardless of the specific facts of any particular case. The majority's reasoning is incompatible with Wisconsin's supervisory writ jurisprudence that has consistently described a supervisory writ as an "extraordinary and drastic remedy" reserved for only the most "grievous exigenc[ies]." Kalal, 271 Wis. 2d 633, ¶17.

¶66 For the reasons set forth, I respectfully dissent.

¶67 I am authorized to state that SHIRLEY S. ABRAHAMSON joins this dissent.

7