# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2018AP203-W |
| COMPLETE TITLE: | State of Wisconsin ex rel. Ezequiel Lopez Quintero, |
| | Petitioner, |
| | v. |
| | Michael A. Dittmann, |
| | Respondent. |

REVIEW OF DECISION OF THE COURT OF APPEALS

| | |
|---|---|
| OPINION FILED: | May 29, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 12, 2018 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Kenosha |
| JUDGE: | David P. Wilk |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | KELLY, J. concurs (opinion filed). |
| DISSENTED: | ROGGENSACK, C.J. dissents, joined by ZIEGLER, J. (opinion filed). |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the petitioner, there were briefs filed by *Gregory W. Wiercioch*, *Victor Pelaez*, student practitioner, and *Frank J. Remington Center*, Madison. There was an oral argument by *Gregory W. Wiercioch*.

For the respondent, there was a brief filed by *Kara L. Mele,* assistant attorney general, with whom on the brief was *Brad D. Schimel,* attorney general. There was an oral argument by *Kara L. Mele*.

An amicus curiae brief was filed on behalf of Wisconsin Association of Criminal Defense Lawyers by *Robert R. Henak* and *Henak Law Office, S.C.*, Milwaukee.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2018AP203-W
(L.C. No. 2007CF535)

STATE OF WISCONSIN          :       IN SUPREME COURT

**State of Wisconsin ex rel. Ezequiel Lopez-Quintero,**

       **Petitioner,**

   **v.**

**Michael A. Dittmann,**

       **Respondent.**

**FILED**

MAY 29, 2019

Sheila T. Reiff
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Reversed and remanded.*

¶1 REBECCA GRASSL BRADLEY, J. We review the court of appeals' decision to summarily deny as untimely Ezequiel Lopez-Quintero's petition for habeas corpus seeking reinstatement of his right to file a direct appeal. Lopez-Quintero contends his petition satisfied all of the requirements under Wis. Stat. § (Rule) 809.51 (2015-16),[1] and the court of appeals erred when it presumed, without ordering a response from the State, that

---

[1] All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

his nine-year delay in filing his petition caused prejudice. We hold that neither the language of Rule 809.51 nor principles of equity require a habeas petitioner to allege timeliness in the petition. We overrule State ex rel. Smalley v. Morgan, 211 Wis. 2d 795, 565 N.W.2d 805 (Ct. App. 1997) (per curiam) abrogated in part by State ex rel. Coleman v. McCaughtry, 2006 WI 49, 290 Wis. 2d 352, 714 N.W.2d 900, which imposed a "prompt and speedy" pleading requirement on habeas petitioners.[2] We reverse the decision of the court of appeals and remand for further proceedings.

## I. BACKGROUND

¶2 Christopher B. Cohen, an Illinois attorney who was also a member of the Wisconsin bar, and Frederick F. Cohn, an Illinois attorney who appeared pro hac vice, represented Lopez-Quintero. On March 7, 2008, a jury found Lopez-Quintero guilty

---

[2] The dissent contends that Coleman did not abrogate Smalley, but Coleman in fact did abrogate Smalley's erroneous enunciation of the laches test. Coleman explained: "[b]ecause it may be difficult to quantify 'actual prejudice,' we conclude that the three-element analysis of Sawyer and Prihoda provides the better analytic framework for assessing a laches defense than does the two-element analysis set out in McMillian, Smalley and Evans." State ex rel. Coleman v. McCaughtry, 2006 WI 49, ¶29, 290 Wis. 2d 352, 714 N.W.2d 900 (referencing Sawyer v. Midelfort, 227 Wis. 2d 124, 595 N.W.2d 423 (1999); State v. Prihoda, 2000 WI 123, 239 Wis. 2d 244, 618 N.W.2d 857; State ex rel. McMillian v. Dickey, 132 Wis. 2d 266, 392 N.W.2d 453 (Ct. App. 1986); State ex rel. Smalley v. Morgan, 211 Wis. 2d 795, 565 N.W.2d 805 (Ct. App. 1997) (per curiam); and State v. Evans, 2004 WI 84, 273 Wis. 2d 192, 682 N.W.2d 784).

of first-degree intentional homicide and carrying a concealed weapon.

¶3  On April 7, 2008, his attorneys filed a motion for a new trial.  Two days later, the circuit court sentenced Lopez-Quintero to life in prison plus five years, without any possibility of extended supervision.  During the sentencing hearing, one of Lopez-Quintero's attorneys discussed a possible appeal with the circuit court.

> [DEFENSE COUNSEL]:  Number one, we have filed a motion for a new trial already.
>
> THE COURT:  Yes, sir.
>
> [DEFENSE COUNSEL]:  Would that relieve us of filing the notice of intent to proceed to appeal?
>
> THE COURT:  No.  I still think you have to file that.
>
> [DEFENSE COUNSEL]:  Within 20 days?
>
> THE COURT:  Right.

¶4  The circuit court gave Lopez-Quintero's attorneys the "Notice of Right to Seek Postconviction Relief" form, which the attorneys reviewed with Lopez-Quintero, who checked the box indicating "I plan to seek postconviction relief."  One of Lopez-Quintero's attorneys also signed the form and certified as follows:

> I have counseled the defendant about the decision to seek postconviction relief.  I have informed the defendant that this decision must be made and communicated to me within 20 days of sentencing.  I believe the defendant understands the right to postconviction relief and the 20 day time limit.  I understand that it is my duty to file the Notice of

3

<u>Intent to Pursue Postconviction Relief on behalf of the defendant if that intent is timely communicated to me</u>.

(Emphasis added.) At the conclusion of the sentencing hearing, one of Lopez-Quintero's attorneys advised he would "get that other document filed within 20 days."

¶5 During the June 10, 2008 hearing on Lopez-Quintero's motion for a new trial, his attorneys discussed Lopez-Quintero's indigence and the possibility of the circuit court appointing them as appellate counsel. The circuit court responded it would "endorse [the] appointment" but expressed it did not "have the ability to appoint you for the appeal." Despite the expiration of the 20-day deadline to file the notice of intent, Lopez-Quintero's attorneys did not request an extension to file one. On the same day, the circuit court granted Lopez-Quintero's "Petition for Waiver of Filing and Service Fees——Affidavit of Indigency and Order" and allowed Lopez-Quintero to "get transcript of trial without payment."

¶6 Lopez-Quintero's actions manifested his intent to pursue postconviction relief. However, no notice of intent was ever filed, and neither of Lopez-Quintero's attorneys requested an extension of time to file the notice of intent. Consequently, an appeal never occurred.

¶7 On February 1, 2018——nearly ten years after his conviction——Lopez-Quintero petitioned the court of appeals for a writ of habeas corpus under Wis. Stat. § (Rule) 809.51; see also

4

State v. Knight, 168 Wis. 2d 509, 484 N.W.2d 540 (1992).[3] Lopez-Quintero, now represented by the Frank J. Remington Center at the University of Wisconsin Law School, alleged that his trial attorneys rendered ineffective assistance by failing to file a notice of intent within the 20-day deadline, and this deficiency caused his direct appeal rights to expire. Lopez-Quintero asked the court of appeals to "reinstate his appellate deadlines, so that he may pursue a direct appeal of his conviction and sentence." The petition alleged that Lopez-Quintero relied on his attorneys to pursue the appeal after he unequivocally indicated his intent to pursue postconviction relief by signing the Notice of Right to Seek Postconviction Relief form and checking the box indicating he intended to seek postconviction relief, but the petition omitted any reason for Lopez-Quintero's failure to file his claim for habeas relief until almost a decade after his appeal rights lapsed.

¶8 The court of appeals denied Lopez-Quintero's petition ex parte under Wis. Stat. § (Rule) 809.51(2). State ex rel. Lopez-Quintero v. Dittmann, No. 2018AP203-W, unpublished order at 1 (Wis. Ct. App. Feb. 12, 2018). It opined that "[t]he

---

[3] "Because the circuit court is unable to provide a remedy for the failure to file a notice of intent to seek postconviction relief . . . the court of appeals is the proper forum for claims of ineffectiveness premised on counsel's failure to file a notice of intent." State ex rel. Kyles v. Pollard, 2014 WI 38, ¶38, 354 Wis. 2d 626, 847 N.W.2d 805. Accordingly, Lopez-Quintero properly filed his habeas petition, alleging ineffective assistance of counsel based on failure to file a notice of intent, in the court of appeals.

problem with Lopez-Quintero's petition is that it comes too late." Id. at 2. Citing Smalley, the court of appeals concluded that "[a]lthough Lopez-Quintero's stated limitations[4] can account for some delay in this case, it [sic] cannot account for over nine years of delay. Accordingly, we are not persuaded that he sought habeas relief in a timely fashion and will deny the petition for that reason." Lopez-Quintero, No. 2018AP203-W, unpublished order at 2-3.

¶9 Lopez-Quintero filed a motion for reconsideration, asking the court of appeals "to reconsider its decision and refrain from denying Mr. Lopez-Quintero's legally-sufficient petition ex parte" or "[a]t the very least . . . order the State to respond, and apply Coleman if the State raises the affirmative defense of laches." Under Coleman, "[t]he State has the burden of proof in regard to all the elements of its laches defense" therefore "the court of appeals erred when it assumed the State was prejudiced by Coleman's unreasonable delay." Coleman, 290 Wis. 2d 352, ¶¶2, 37. The court of appeals denied the motion, and Lopez-Quintero petitioned this court for review, which we granted.

---

[4] In his petition to the court of appeals for a writ of habeas corpus, Lopez-Quintero asserted he did not speak English and was unfamiliar with the American criminal justice system, which we presume to be the "stated limitations" the court of appeals referenced in its ex parte denial of the petition.

## II. ANALYSIS

¶10 While habeas relief may be denied under the well-established doctrine of laches if a petitioner unreasonably delays the filing of his petition, this case resolves whether the court of appeals may deny an otherwise sufficiently pled habeas petition ex parte, without a hearing or a response from the State, solely because the court of appeals deems it to be untimely. We hold that the court of appeals may not deny a habeas petition ex parte on the ground the petitioner failed to demonstrate he sought relief in a prompt and speedy manner. We overrule Smalley. Any equitable concerns regarding substantial delays, such as the near ten-year delay in the current case, are properly raised not sua sponte by the court of appeals but instead by the State asserting the defense of laches and establishing prejudice resulting from the delay.[5]

### A. Standard of Review

¶11 We review the legal issues arising out of a habeas petition independently. Coleman, 290 Wis. 2d 352, ¶17. This case requires us to interpret Wis. Stat. § (Rule) 809.51, which

---

[5] The dissent misapprehends this court's rather limited holding, which simply requires the State to respond to the petition, after which the court of appeals will decide whether to grant it or not, considering any equitable defenses the State may assert. Contrary to the dissent's characterization of this opinion, we do not engage in any factfinding and the petitioner retains the burden of proving the allegations in his petition. The court of appeals denied him the opportunity to do so based on Smalley's misstatement of applicable law.

presents a question of law. See State v. Ziegler, 2012 WI 73, ¶37, 342 Wis. 2d 256, 816 N.W.2d 238.

B. General Legal Principles

¶12 "A petition for writ of habeas corpus commences a civil proceeding wherein the petitioner claims an illegal denial of his or her liberty." Coleman, 290 Wis. 2d 352, ¶18. Often referred to as the "Great Writ," habeas corpus "indisputably holds an honored position in our jurisprudence." Engle v. Isaac, 456 U.S. 107, 126 (1982). Its roots spring from English common law, and "its availability is guaranteed by the U.S. Constitution, the Wisconsin Constitution, and by state and federal statute." State ex rel. Marberry v. Macht, 2003 WI 79, ¶22, 262 Wis. 2d 720, 665 N.W.2d 155 (quoting State ex rel. Haas v. McReynolds, 2002 WI 43, ¶11, 252 Wis. 2d 133, 643 N.W.2d 771); see also State ex rel. L'Minggio v. Gamble, 2003 WI 82, ¶17, 263 Wis. 2d 55, 667 N.W.2d 1; Wis. Stat. § 782.01(1) ("Every person restrained of personal liberty may prosecute a writ of habeas corpus to obtain relief from such restraint subject to [Wis. Stat. §§] 782.02 and 974.06.").

¶13 The Great Writ constitutes "a bulwark against convictions that violate 'fundamental fairness.'" Engle, 456 U.S. at 126 (quoted source omitted). Founded on principles of equity, habeas corpus "test[s] the right of a person to his personal liberty." Marberry, 262 Wis. 2d 720, ¶22 (quoted source omitted; alteration in original). "The purpose of the writ is to protect and vindicate the petitioner's right to be free from illegal restraint." Id.; see also State ex rel.

8

Zdanczewicz v. Snyder, 131 Wis. 2d 147, 151, 388 N.W.2d 612 (1986). "Its function is to provide a prompt and effective judicial remedy to those who are illegally restrained of their personal liberty." State ex rel. Wohlfahrt v. Bodette, 95 Wis. 2d 130, 133, 289 N.W.2d 366 (Ct. App. 1980).

¶14 However, "[t]he extraordinary relief provided by the writ of habeas corpus is available only in limited circumstances," and the writ "does not issue as a right." Marberry, 262 Wis. 2d 720, ¶¶23, 25 (quoted source omitted). A party seeking habeas relief must be restrained of his liberty and "show that the restraint was imposed by a body without jurisdiction or that the restraint was imposed contrary to constitutional protections." Haas, 252 Wis. 2d 133, ¶12. Additionally, the party "must show that there was no other adequate remedy available in the law." Id.; see also Waley v. Johnston, 316 U.S. 101, 105 (1942) (extending the use of the writ "to those exceptional cases where the conviction has been in disregard of the constitutional rights of the accused, and where the writ is the only effective means of preserving his rights.").

> We have long and consistently held that the extraordinary writ of habeas corpus is not available to a petitioner when the petitioner has other adequate remedies available. For instance, habeas corpus is not available to challenge a bindover decision by a court commissioner because the decision is challengeable on a statutory motion to dismiss. Similarly, the writ is not available to challenge the sufficiency of probable cause to issue a criminal complaint, even when the challenge is brought between arrest and the preliminary hearing, because the

9

challenge can be made using other remedies at trial. Habeas corpus proceedings are likewise not available to challenge an administrative order revoking probation, since a writ of certiorari is available, and is the proper remedy under such circumstances. In short, if the petitioner has an otherwise adequate remedy that he or she may exercise to obtain the same relief, the writ will not be issued.

Marberry, 262 Wis. 2d 720, ¶25 (quoting Haas, 252 Wis. 2d 133, ¶14). Ultimately, "the burden is on the petitioner . . . to demonstrate by a preponderance of the evidence that his detention is illegal." State ex rel. Hager v. Marten, 226 Wis. 2d 687, 694, 594 N.W.2d 791 (1999).

¶15 A habeas petition filed in the court of appeals under Wis. Stat. § (Rule) 809.51(1) "must contain a statement of the legal issues and a sufficient statement of facts that bear on those legal issues, which if found to be true, would entitle the petitioner to relief." Coleman, 290 Wis. 2d 352, ¶18. The statute provides:

(1) A person may request the court to exercise its supervisory jurisdiction or its original jurisdiction to issue a prerogative writ over a court and the presiding judge, or other person or body, by filing a petition and supporting memorandum. . . . The petition shall contain:

(a) A statement of the issues presented by the controversy;

(b) A statement of the facts necessary to an understanding of the issues;

(c) The relief sought; and

(d) The reasons why the court should take jurisdiction.

10

Rule 809.51(1).[6] Subsection (2) provides the "court may deny the petition ex parte or may order the respondents to file a response with a supporting memorandum, if any, and may order oral argument on the merits of the petition." Rule 809.51(2).

¶16 As the respondent, the State may assert equitable defenses such as laches in opposing a habeas petition.[7] "Laches is an equitable defense to an action based on the plaintiff's unreasonable delay in bringing suit under circumstances in which such delay is prejudicial to the defendant." Sawyer v. Midelfort, 227 Wis. 2d 124, 159, 595 N.W.2d 423 (1999). The application of laches to bar habeas petitions is well-established. See Coleman, 290 Wis. 2d 352, ¶¶2, 19-25. Although our courts have described the elements of laches in various ways, we concluded in Coleman that the three-element test described in some of our cases "provides the better analytic framework for assessing a laches defense." Id., ¶29.

---

[6] The dissent would rewrite the statute to additionally require a habeas petitioner who claims his appeal rights were denied to allege "when, where or how [he] specifically directed his trial counsel to appeal." Dissent, ¶58. This heightened "when, where or how" pleading requirement does not appear in the text of the statutes or in any Wisconsin cases.

[7] Although Michael A. Dittmann, the warden of the correctional facility where Lopez-Quintero is confined, is the respondent in this case, see Wis. Stat. § 782.01 ("'respondent' means the person on whom the writ is to be served"), the Wisconsin Department of Justice represents Dittmann and responds to the petition; therefore, we reference the respondent as the "State." See e.g., Coleman, 290 Wis. 2d 352, ¶¶13-15, 31-37 (generally referring to the respondent as the State).

11

Under Coleman, the elements of the defense of laches are: (1) unreasonable delay in filing the habeas petition, (2) lack of knowledge on the part of the State that the petitioner would be asserting the habeas claim, and (3) prejudice to the State. Id., ¶¶28-29. As the party asserting the defense, the State bears the burden to raise and prove all elements of the defense. Id., ¶2.

### C. Application

¶17 The sole issue presented is whether the court of appeals may deny a habeas petition ex parte for the petitioner's failure to plead that his claim was brought in a timely manner. We conclude it may not. Lopez-Quintero's habeas petition was sufficiently pled in accordance with the statutory prescriptions. The petition contained a "statement of the legal issues and a sufficient statement of facts [bearing] on those legal issues, which if found to be true, would entitle [Lopez-Quintero] to relief." See Coleman, 290 Wis. 2d 352, ¶18. Lopez-Quintero's petition alleges that he communicated his desire to seek postconviction relief by indicating his intent "to seek postconviction relief" on the Notice of Right to Seek Postconviction Relief form, which his attorney also signed, explicitly acknowledging the attorney's "duty to file the Notice

of Intent to Pursue Postconviction Relief."[8] See Wis. Stat. § 973.18(5) (explaining that "[i]f the defendant desires to

---

[8] The dissent misjudges Lopez-Quintero's habeas petition as insufficient because he did not allege making "a specific request of counsel to appeal" and accuses the court of "adding facts to the petition" to cure the petition's purported deficiency. Dissent, ¶¶50-51. The dissent is wrong on both counts. Lopez-Quintero checked the box on the Notice of Right to Seek Postconviction Relief form indicating "I plan to seek postconviction relief." He did not check either of the two other options on the form: "I do not plan to seek postconviction relief" or "I am undecided about seeking postconviction relief and I know I need to decide and tell my lawyer within 20 days." One of Lopez-Quintero's attorneys signed this form and acknowledged his responsibility to file a notice of intent to pursue postconviction relief in accordance with Lopez-Quintero's unequivocal wishes. Because Lopez-Quintero explicitly indicated his intent to pursue postconviction relief, his attorneys were obligated to file a notice of intent to pursue postconviction relief under Wis. Stat. § (Rule) 809.30(2)(b). See Wis. Stat. § 973.18(5). This notice was a prerequisite to any postconviction relief, including an appeal. Rule 809.30(2)(a)-(b). The attorneys' inaction in response to Lopez-Quintero's specific instruction to file the notice of intent under Rule 809.30(2)(b) resulted in the "complete denial of appeal," and prejudice is therefore "presumed." See State ex rel. Flores v. State, 183 Wis. 2d 587, 620, 516 N.W.2d 362 (1994). It is this "forfeiture of a proceeding"——here, an appeal——and the "complete denial of counsel" that carries the presumption of prejudice. See Roe v. Flores-Ortega, 528 U.S. 470, 483 (2000). It is immaterial that Lopez-Quintero indicated his intent to seek "postconviction relief" rather than specifying he wished to appeal; his attorneys' inaction resulted in the complete denial of any postconviction proceedings——including an appeal.

(continued)

pursue postconviction relief, the defendant's trial counsel shall file" the notice of intent to pursue postconviction relief). The petition further alleges that he relied on his attorneys to file the notice of intent to pursue postconviction relief, which is a precondition to pursuing an appeal. See Wis. Stat. § (Rule) 809.30(2)(a)-(b). Lopez-Quintero's attorneys

---

The dissent also faults Lopez-Quintero for failing to explain "why an appeal was not pursued" and speculates that "[p]erhaps after denial of the motion for a new trial, counsel and Lopez-Quintero decided an appeal would not be worth pursuing." Dissent, ¶54. The dissent quotes Flores-Ortega, 528 U.S. at 486 for the proposition that "evidence that [a defendant] sufficiently demonstrated to counsel his interest in an appeal . . . is insufficient to establish that, had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal." Dissent, ¶44. But the quoted language in Flores-Ortega did not address Lopez-Quintero's situation, in which his attorneys disregarded his instructions to file a notice of intent to pursue postconviction relief thereby depriving him of his right to appeal, which has long been held to constitute ineffective assistance of counsel. See Flores, 183 Wis. 2d at 620 ("[W]henever the ineffective assistance is such as to deprive one totally of the right to appeal, the prejudice showing is presumed."); see also Flores-Ortega, 528 U.S. at 483 (explaining that deficient performance leading to the forfeiture of a judicial proceeding is presumed to be prejudicial). Instead, Flores-Ortega considered whether counsel was "deficient for not filing a notice of appeal when the defendant has not clearly conveyed his wishes one way or the other." Flores-Ortega, 528 U.S. at 477 (emphasis added). Because Lopez-Quintero's petition alleged that he clearly communicated his desire to pursue postconviction relief to his attorneys, the dissent's speculation about why an appeal was never filed is irrelevant. Lopez-Quintero's allegations, if proved, would establish ineffective assistance of counsel. See Flores, 183 Wis. 2d at 620.

14

failed to do so, depriving him of any opportunity to appeal.[9] Trial counsel's "failure to perfect an appeal when the defendant has indicated a desire to appeal constitutes ineffective assistance of counsel." See State ex rel. Flores v. State, 183 Wis. 2d 587, 615, 516 N.W.2d 362 (1994) (quoted source omitted). Whenever ineffective assistance of counsel results in the "complete denial of appeal, prejudice is presumed." Id. at 620; see also Garza v. Idaho, 139 S. Ct. 738, 744 (2019) (explaining that "prejudice is presumed 'when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken'" (quoting Roe v. Flores-Ortega, 528 U.S. 470, 484 (2000)); Flores-Ortega, 528 U.S. at 477 (explaining that "[w]e have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable," and "'[w]hen counsel fails to file a requested

---

[9] The dissent faults Lopez-Quintero for failing to attach an "affidavit" or a "transcript from an evidentiary hearing" to support his claim. Dissent, ¶39. No law supports the proposition that such evidentiary materials are necessary to plead a habeas claim. Under the law governing habeas pleading requirements, the defendant must allege sufficient facts "which if found to be true, would entitle the petitioner to relief." See Coleman, 290 Wis. 2d 352, ¶18 (emphasis added). Contrary to the dissent's view of the case, we are at the pleading stage; Lopez-Quintero submitted a sworn petition for habeas corpus attesting that the facts alleged in the petition (including the attachments) were "true and correct." See Wis. Stat. § 782.04 (a petition for habeas corpus "must be verified"). The additional evidentiary materials listed by the dissent may, in some cases, be necessary to prove a habeas claim, but they are not necessary to plead the claim.

15

appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have had merit'" (quoted source omitted; third alteration in original)); Strickland v. Washington, 466 U.S. 668, 692 (1984) ("Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice."); Castellanos v. United States, 26 F.3d 717, 718 (7th Cir. 1994) (explaining that "[i]f the defendant told his lawyer to appeal, and the lawyer dropped the ball, then the defendant has been deprived, not of effective assistance of counsel, but of any assistance of counsel on appeal," which is a "per se violation of the sixth amendment"). Because a habeas petitioner need not plead that his petition was filed in a timely manner, we reverse the court of appeals' decision denying Lopez-Quintero's statutorily-compliant petition and remand for further proceedings.

¶18 We begin with an analysis of Wis. Stat. § (Rule) 809.51. Subsection (1) describes what the petitioner must allege in the petition. While the statute requires the petitioner to provide a statement of the issues, a statement of facts, the relief sought, and the reasons the court should take jurisdiction, see Rule 809.51(1)(a)-(d), it does not impose any time limit on when a petition may be brought. Id. Subsection (2) describes what the court of appeals may do upon receipt of the petition. It may deny the petition ex parte or order a response, and it may order oral argument on the merits. Rule

809.51(2). Lack of timeliness is not listed as a basis for denying a petition ex parte.[10] The statute does not impose any deadline within which a petitioner must bring a habeas petition. In the absence of language imposing a time limit on filing a petition for the court of appeals to issue a writ of habeas corpus, we will not read one into the statute.[11] Under the omitted-case canon of statutory interpretation, "[n]othing is to be added to what the text states or reasonably implies (casus omissus pro omisso habendus est). That is, a matter not covered is to be treated as not covered." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 93 (2012); see also Wisconsin Ass'n of State Prosecutors v. WERC, 2018 WI 17, ¶45, 380 Wis. 2d 1, 907 N.W.2d 425 ("Nothing is to be added to what the text states or reasonably implies" (quoting Scalia & Garner, Reading Law at 93)). "One of the maxims of statutory construction is that courts should not add words to a statute to give it a certain meaning." Fond Du Lac Cty. v. Town

---

[10] Subsection (3) authorizes the court of appeals to grant or deny the petition after considering the petition, responses, supporting memoranda, and argument, and subsection (4) requires a statement identifying compliance with certain formatting requirements for the petition. Wis. Stat. § (Rule) 809.51(3), (4).

[11] We already implicitly recognized the absence of a statutory time limit in Coleman. We explained that, in this respect, Wisconsin's rules on state habeas claims differ from the federal rules, which provide that relief "is available to a state prisoner for only one year after the state conviction becomes final." See Coleman, 290 Wis. 2d 352, ¶24 n.5. Wisconsin's rules contain no such limit. Id.

17

of Rosendale, 149 Wis. 2d 326, 334, 440 N.W.2d 818 (Ct. App. 1989). Therefore, if habeas petitioners are subject to any sort of timeliness requirement, it must derive from a different source.

¶19 The State maintains that the court of appeals properly denied Lopez-Quintero's habeas petition ex parte. It appears to concede that Wis. Stat. § (Rule) 809.51 contains no timeliness requirement, but it emphasizes that the statute "does not purport to provide a comprehensive treatment of the issue of extraordinary writs" and therefore does not foreclose the imposition of a timeliness requirement as a matter of equity. The State grounds its argument in Smalley, which denied a habeas petition ex parte for failing to allege facts demonstrating that the petitioner sought prompt and speedy relief. Smalley, 211 Wis. 2d at 801-02. The State insists that Lopez-Quintero has not shown that Smalley is objectively wrong; therefore, the State argues, we should reject his invitation to overrule it. We disagree and overrule Smalley.

¶20 In Smalley, the court of appeals denied a habeas petition ex parte because the petitioner "did not timely file his petition." Smalley, 211 Wis. 2d at 796. Because "[t]he purpose of habeas corpus is 'to provide a prompt and effective judicial remedy to those who are illegally restrained of their personal liberty,'" the court of appeals held that Wis. Stat. § (Rule) 809.51(1) requires a habeas petitioner to "allege facts [in the petition] demonstrating that he sought prompt and speedy relief." Smalley, 211 Wis. 2d at 802 (quoting Wohlfahrt, 95

18

Wis. 2d at 133). The court of appeals did not attempt to justify this new pleading requirement under the text of Rule 809.51(1), which contains no such requirement. Instead, the court of appeals invoked the principles of equitable estoppel and laches, which it used to read a timeliness requirement into Rule 809.51(1). Smalley, 211 Wis. 2d at 800. It further reasoned that "[e]quitable remedies are not available to one whose own actions or inactions result in the harm." Id. (quoted source omitted). Without any analysis, but merely highlighting the length of the delay, the court of appeals concluded the State was prejudiced by the "untimely habeas petition." Id. at 803. The court of appeals did, however, clarify that "[w]hether a defendant's claim is made within a reasonable time must be evaluated on a case-by-case basis." Id. at 802.

¶21 Smalley's imposition of a "prompt and speedy" pleading requirement for habeas claims is unsupported either by the statutory text or Wisconsin cases. The equitable cases cited in Smalley offer no support for its extra-textual conclusion that Wis. Stat. § (Rule) 809.51(1) imposes a burden on habeas petitioners to allege that they sought relief in a "prompt and speedy" manner or risk their petitions being denied ex parte under Rule 809.51(2). Under the doctrine of laches, it is the State, not the petitioner, who bears the burden to show laches should be applied to bar a habeas petition. Indeed, in Coleman we recognized the weakness of Smalley's reliance on laches to deny a habeas petition ex parte, thereby relieving the State of its burden to establish the elements of that affirmative

19

defense, when we remarked that Smalley "conflated its analysis of the habeas petition's timeliness with the unreasonable delay element of laches." Coleman, 290 Wis. 2d 352, ¶25 (footnote omitted).[12] In a similar vein, equitable estoppel in this context is a defense to be raised by the State, and "[t]he burden of proving the elements of equitable estoppel is on the party asserting it as a defense." See Coconate v. Schwanz, 165 Wis. 2d 226, 231-32, 477 N.W.2d 74 (Ct. App. 1991). Neither

---

[12] Certain language in Coleman suggests that the timeliness of a habeas petition is a factor to be considered "under the principles that we have set for evaluating habeas petitions." Coleman, 290 Wis. 2d 352, ¶25 n.6. The court in Coleman proceeded to explain that "[t]he foundation for the decision in Smalley becomes readily apparent when the decision places the burden of proof for timeliness of the petition on Smalley, which is in accord with reviewing timeliness in regard to a habeas petition." Coleman, 290 Wis. 2d 352, ¶25. Coleman, however, never identifies the source for the purported timeliness requirement. Other than this unsupported language from Coleman, we discovered no basis in law or equity for the proposition that a timeliness requirement inheres in habeas petitions and the State in this case identifies none. Indeed, the State recognized that only "[s]ince Smalley" has "this Court . . . acknowledged that a petitioner seeking a writ of habeas corpus under Wis. Stat. § (Rule) 809.51 has the burden of proof to show the timeliness of his petition." While timeliness must be shown by a party seeking a supervisory writ, see State ex rel. CityDeck Landing LLC v. Circuit Court for Brown Cty., 2019 WI 15, ¶30, 385 Wis. 2d 516, 922 N.W.2d 832, it never was a prerequisite for a habeas petition, until Smalley mistakenly imported the concept into Rule 809.51. Perhaps Coleman's stray references to "reviewing timeliness in regard to a habeas petition" derive from the "prompt and speedy" factor that must be shown by petitioners seeking supervisory writs; the decision does not say. Regardless, the only source for shifting the burden of proof to the habeas petitioner to show timeliness is Smalley, which erroneously conjured this requirement from a statute that is entirely silent on the subject.

20

doctrine provides any foundation for denying a habeas petition ex parte on the basis that the petitioner failed to allege the petition was made within a reasonable time. Any equitable defense to a habeas petition must be raised and proven by the State, which cannot be done unless the State is required to respond to the petition.

¶22 Smalley's reliance on the general principle that "[e]quitable remedies are not available to one whose own actions or inactions result in the harm" is a similarly unpersuasive justification for its "prompt and speedy" pleading requirement. The quoted precept came from Lohr v. Viney, 174 Wis. 2d 468, 477, 497 N.W.2d 730 (Ct. App. 1993), in connection with that court's application of equitable estoppel. See Smalley, 211 Wis. 2d at 800. Setting aside the unavailability of equitable estoppel to deny a habeas petition ex parte, Smalley's reliance on this language begs the question of what "harm" the petitioner caused. Smalley assumed, with little analysis and no response by the State, that mere delay (which the court of appeals unilaterally deemed unreasonable) necessarily harmed, or prejudiced, the State. Smalley, 211 Wis. 2d at 803. There is no legal footing for this presumption, which led us to reject a similar presumption in Coleman. The court of appeals in Coleman, as in Smalley, put the cart before the horse by concluding the State was prejudiced by the petitioner's delay in seeking habeas relief, without requiring the State to first assert unreasonable delay and then prove it prejudiced the State. As we observed in Coleman, delay does not automatically

21

prejudice the State, which must not only allege prejudice but then prove a factual basis for it. <u>Coleman</u>, 290 Wis. 2d 352, ¶36.

¶23 <u>Smalley</u> manufactured the requirement that a habeas petitioner must prove his petition was "prompt and speedy," a precondition not found in Wis. Stat. § (Rule) 809.51(1) or the equitable cases the court cited.[13] Although <u>Coleman</u> recognized that <u>Smalley</u> confused laches with pleading requirements, it overlooked <u>Smalley</u>'s mistaken application of <u>Wohlfahrt</u>, which understood that the "function" of habeas corpus "is to provide a prompt and effective judicial remedy to those who are illegally restrained of their personal liberty." <u>Wohlfahrt</u>, 95 Wis. 2d at 133. <u>Smalley</u> turned this purpose for habeas on its head. Rather than safeguarding the liberty interests of a petitioner who was illegally restrained, <u>Smalley</u> misused this language to

---

[13] The dissent cites <u>State ex rel. Kalal v. Circuit Court for Dane Cty.</u>, 2004 WI 58, ¶17, 271 Wis. 2d 633, 681 N.W.2d 110 for the proposition that a habeas petitioner "must show that 'the request for relief [was] made promptly and speedily." Dissent, ¶45. <u>Kalal</u>'s application of the longstanding "prompt and speedy" requirement applies to supervisory writs, not writs of habeas corpus. <u>See Kalal</u>, 271 Wis. 2d 633, ¶17. The dissent confuses the two. <u>Compare id.</u> (supervisory writ will not be granted unless "(1) an appeal is an inadequate remedy; (2) grave hardship or irreparable harm will result; (3) the duty of the trial court is plain and it must have acted or intends to act in violation of that duty; and (4) the request for relief is made promptly and speedily") <u>with State ex rel. Haas v. McReynolds</u>, 2002 WI 43, ¶12, 252 Wis. 2d 133, 643 N.W.2d 771 (habeas corpus is available where a party is restrained of his liberty, the restraint was imposed by a body without jurisdiction or contrary to constitutional protections, and there is no other adequate remedy at law).

instead protect the State by imposing a requirement on the petitioner to plead that he sought relief in a prompt and speedy manner.[14] Nothing in the language lifted from Wohlfahrt supports this application.

¶24 With no statutory or common law basis for Smalley's "prompt and speedy" pleading requirement, we decline to impose one. Equity cannot be advanced by denying a statutorily-compliant habeas petition solely because an appellate court deems it to be filed too late, absent the State showing that the delay prejudiced it. As implicitly reflected in the elements of the test for laches, numerous factors may influence the determination of whether it is equitable to bypass the merits of a claim on the basis of unreasonable delay. See e.g., Coleman, 290 Wis. 2d 352, ¶29 (explaining that "assessing whether a party raising laches did not have knowledge that the claim would be brought will permit the circuit court to more fully" evaluate "the effect of a claim that has been unreasonably delayed." (emphasis added)). Such considerations cannot be fully vetted by an ex parte review of the petition.

---

[14] Smalley quoted Wohlfahrt for the proposition that "[t]he purpose of habeas corpus 'is to provide a prompt and effective judicial remedy to those who are illegally restrained of their personal liberty,'" and concluded in the next two sentences that "Smalley's petition does not allege facts demonstrating that he sought prompt and speedy relief" and "[s]uch a showing is required." Smalley, 211 Wis. 2d at 802 (quoting State ex rel. Wohlfahrt v. Bodette, 95 Wis. 2d 130, 133, 289 N.W.2d 366 (Ct. App. 1980)).

¶25 The parties' differing accounts of the near-ten-year delay in the filing of Lopez-Quintero's petition illustrate why the myriad of facts that could bear on whether it is equitable to bar Lopez-Quintero's statutorily-compliant habeas petition cannot be fully addressed in an ex parte denial. The State accuses Lopez-Quintero of sleeping on his rights. While conceding, as the court of appeals did, that his "stated limitations account for some delay in this case," the State insists that "Lopez-Quintero's lack of English proficiency, lack of education, and lack of familiarity with Wisconsin's criminal justice system" do not account for all of the delay.

¶26 Lopez-Quintero describes in his brief to this court multiple reasons for his delay in seeking habeas relief.[15] In addition to asserting in his verified habeas petition linguistic impediments, limited education, and unfamiliarity with the criminal justice system, Lopez-Quintero delineates in his brief a procedural history that he claims explains the delay. We do not recount, accept as true, or rely upon Lopez-Quintero's assertions concerning his reasons for filing his habeas petition nearly ten years after his appeal rights expired. His account

---

[15] The State protests that the petition itself did not include the specific reasons for the delay in seeking habeas relief that Lopez-Quintero now presents to this court. Because we conclude that the law does not require habeas petitioners to allege timeliness in their petitions, the purported insufficiency or even the total absence of any explanation in the petition for Lopez-Quintero's delay in filing it is irrelevant.

is immaterial to the issue we decide. We merely highlight that the court of appeals never fully addressed the equitable considerations related to the timing of the habeas petition——which would include Lopez-Quintero's proffered reasons for the delay——because it dismissed the petition ex parte. Lopez-Quintero's articulated reasons for his delay in filing his habeas petition are properly considered after the State's assertion of laches in response to the petition, not before.

¶27 The State worries that declining to impose a timeliness requirement for pleading habeas claims undermines the finality of judgments and would allow "a petitioner [to] seek a writ of habeas corpus 50 years after his conviction." The State's fears are unfounded. Laches provides a process to balance the State's concerns regarding the prejudice it could suffer in being forced to respond to decades-old claims, as well as the State's interest in the finality of judgments, against the Great Writ's protection of constitutional rights.[16] Consistent with our previous decisions, Lopez-Quintero's habeas petition, or any other, may be barred if the State successfully argues laches. The burden to demonstrate why a statutorily-compliant claim for habeas relief should be denied as untimely

---

[16] Laches similarly provides the process to address the dissent's complaint that "it did not take Lopez-Quintero ten years to figure out that no appeal was pending." Dissent, ¶56. Equitable concerns about the near ten-year delay must be addressed after hearing both sides, not in a perfunctory ex parte dismissal.

rests with the party seeking to avoid a substantive review of the issue. Coleman, 290 Wis. 2d 352, ¶2 ("The State has the burden of proof in regard to all the elements of its laches defense.") If Lopez-Quintero's delay was unreasonable, the State did not know Lopez-Quintero would bring the claim, and the delay prejudiced the State, then the claim may be barred. See id., ¶17 (explaining that once "the defense of laches is proved, whether to apply laches and dismiss the habeas petition is left to the discretion of the court of appeals"). It is the State who bears the burden of proving the elements of laches.

¶28 A petition for habeas corpus constitutes the final opportunity for an individual restrained of his personal liberty to establish that the State's action against him violated our constitutions or other law, after all other avenues for relief are exhausted or shown to be inadequate. Habeas is the people's bulwark against illegal confinement by the government. Bearing in mind that "the overriding responsibility of [the Supreme] Court is to the Constitution of the United States" and of this court, to the Wisconsin Constitution as well, "no matter how late it may be that a violation of the Constitution is found to exist,"[17] the court of appeals cannot forever foreclose an individual's appellate rights, ex parte and on the basis of untimeliness, when his attorneys failed to file the form necessary to initiate the appeal he requested. Absent a demonstration of prejudice by the State, a habeas petition may

---

[17] See Chessman v. Teets, 354 U.S. 156, 165 (1957).

not be denied merely because it was filed later than the court of appeals believes it should have been.

### III. CONCLUSION

¶29 We hold that neither Wis. Stat. § (Rule) 809.51 nor equity imposes a "prompt and speedy" pleading requirement in the filing of a petition for habeas corpus. The equitable defense of laches exists to address any prejudice to the State caused by a petitioner's unreasonable delay in the filing of a habeas petition. A habeas petition may not be denied ex parte solely because the petitioner failed to assert and demonstrate he sought relief in a "prompt and speedy" manner. Instead, the State bears the burden to raise laches as a defense and prove (1) unreasonable delay, (2) lack of knowledge that the petitioner would bring a habeas claim, and (3) resulting prejudice. The State did not do so here because the court of appeals erred in denying the petition ex parte without giving the State the opportunity to respond and prove laches.

¶30 We recognize that "habeas corpus should not be 'made the instrument for re-determining the merits of all cases in the legal system that have ended in detention.'" Rose v. Mitchell, 443 U.S. 545, 581 (1979) (Powell, J., concurring in the judgment; quoted source omitted). Our decision is a narrow one and we make no assessment of the merits of Lopez-Quintero's petition, much less the merits of his appeal should the court of appeals reinstate his appellate deadlines; we merely recognize his right to have his statutorily-compliant petition considered without the court of appeals imposing a non-existent timeliness

27

requirement as a basis for denying the petition ex parte.[18] Accordingly, we reverse the decision denying Lopez-Quintero's petition for habeas corpus and remand to the court of appeals for further proceedings on the petition.

*By the Court.*——The decision of the court of appeals is reversed and remanded.

---

[18] The court of appeals retains the discretion to otherwise deny habeas petitions ex parte on any grounds available under the law. See Wis. Stat. § (Rule) 809.51(2). Puzzlingly, the dissent asserts that the court "never says why the court of appeals erroneously exercised the discretion the legislature granted to it." Dissent, ¶63. Of course, the entirety of this opinion explains why the court of appeals erred, although we recognize it relied on unsound cases it was bound to apply. The dissent seemingly equates "discretion" with "whim" but of course the exercise of a court's discretion must be grounded in the law, and as we have explained in some detail, ex parte denial of a habeas petition for untimeliness bears no support in law or equity. See State v. Avery, 2013 WI 13, ¶23, 345 Wis. 2d 407, 826 N.W.2d 60 (court of appeals "erroneously exercises its discretion when it applies the wrong legal standard"); State v. Martel, 2003 WI 70, ¶8, 262 Wis. 2d 483, 664 N.W.2d 69 (explaining that "a discretionary decision that is based upon an error of law is an erroneous exercise of discretion"); see also State ex rel. Singh v. Kemper, 2016 WI 67, ¶25, 371 Wis. 2d 127, 883 N.W.2d 86 ("Whether a writ of habeas corpus is available to the party seeking relief is a question of law that we review independently of the determinations rendered by the circuit court and the court of appeals.").

28

¶31 DANIEL KELLY, J. *(concurring)*. We have previously suggested that a habeas petitioner must allege facts supporting the petition's timeliness (see State ex rel. Coleman v. McCaughtry, 2006 WI 49, ¶25, 290 Wis. 2d 352, 714 N.W.2d 900), which I believe is a good and prudent safeguard against abuse of this writ; but Coleman does not establish the timeliness element with clarity, and rather than announcing such an element in a contested case, I believe we should follow the federal court's example of adopting the requirement through rulemaking (see Fed. R. App. P. 9(a)). With that caveat, I join the court's opinion.

¶32 PATIENCE DRAKE ROGGENSACK, C.J. *(dissenting)*. The majority opinion errs in three major respects: First, by excusing Lopez-Quintero's insufficiently pled petition; second, by assuming the role of factfinder as it grounds its decision in facts outside of the record that were never pled or supported by affidavit, thereby accepting a petition that never asserts when, where or how Lopez-Quintero specifically directed his attorney to file an appeal; and third, by permitting habeas to lie ten years after Lopez-Quintero's trial and conviction without a reasonable factual basis for the delay, the majority opinion excuses a ten-year delay. This is a sea change in the responsibilities of a habeas petitioner, thereby creating an opportunity for abuse of habeas in regard to direct appeals.

¶33 Accordingly, because the majority opinion overturns long-standing habeas corpus precedent without recognizing that it exists and thereafter does not apply Strickland v. Washington, 466 U.S. 668 (1984), as interpreted by the United States Supreme Court in Roe v. Flores-Ortega, 528 U.S. 470 (2000), in regard to direct appeals, I would affirm the court of appeals, and I respectfully dissent from the majority opinion.

## I. BACKGROUND

¶34 On March 7, 2008, Lopez-Quintero was convicted of first-degree intentional homicide with use of a dangerous weapon and carrying a concealed weapon after a six-day jury trial.[1] On

---

[1] Lopez-Quintero was represented by privately paid counsel at trial.

April 9, 2008, he was sentenced to life in prison without the possibility of parole. He moved for a new trial.[2] Lopez-Quintero signed a Notice of Right to Seek Postconviction Relief (Notice of Right) form while he was in court on April 9, 2008. Wisconsin Stat. § 973.18(3) requires:

> Before adjourning the sentencing proceeding, the judge shall direct the defendant and defendant's trial counsel to sign a form to be entered in the record, indicating that the lawyer has counseled the defendant regarding the decision to seek postconviction relief, and that the defendant understands that a notice of intent to pursue postconviction relief must be filed in the trial court within 20 days after sentencing for that right to be preserved.

Lopez-Quintero was given a copy of the form he signed. Wis. Stat. § 973.18(4). The Notice of Right form does not evidence Lopez-Quintero's intent to appeal. Rather, the box he checked states: "I plan to seek postconviction relief." "Postconviction relief," which is defined in Wis. Stat. § 809.30(1)(c), is not specific to an appeal, but also includes various motions for relief following conviction.

¶35 On June 10, 2008, the circuit court denied Lopez-Quintero's request for a new trial because the evidence of his guilt was so overwhelming that the circuit court concluded a new trial would produce the same result. For example, gunshots that caused the homicide came from a car owned by Lopez-Quintero, and Lopez-Quintero was found a short time after the shooting with the murder weapon tucked into the waistband of his pants.

---

[2] Lopez-Quintero's trial counsel represented him on his postconviction motion.

2

¶36 When the circuit court denied Lopez-Quintero's motion for a new trial, his attorneys asked about filing an appeal. In preparation for the potential of an appeal, the circuit court granted Lopez-Quintero fee waivers for trial transcripts. The circuit court also waived the service and filing fees that would be applicable if he decided to appeal. In addition, the court directed Lopez-Quintero's trial counsel to continue until a decision about whether to appeal was made. The transcripts for Lopez-Quintero's trial were filed during 2008 and payment was made by the State, according to the record for Kenosha County Case No. 2007CF535.

¶37 Neither Lopez-Quintero nor anyone acting on his behalf filed anything in regard to appealing or inquiring about an appeal of his conviction until February 1, 2018, when the Remington Center filed this petition for writ of habeas corpus on his behalf in the court of appeals.[3]

¶38 The petition for habeas asserts that Lopez-Quintero's "trial attorneys failed to fulfill their constitutional and statutory obligations to file a Notice of Intent to Seek Postconviction Relief ('Notice of Intent') within 20 days after sentencing."[4] The petition alleges that failing to make the

---

[3] Wisconsin Stat. § 782.04 states that petitions for habeas corpus "must be verified." Maier v. Byrnes, 121 Wis. 2d 258, 262, 358 N.W.2d 833 (Ct. App. 1984). Verification entails signing a document in the presence of a notary public to assure the truthfulness of the factual allegations. Kellner v. Christian, 197 Wis. 2d 183, 188-89, 539 N.W.2d 685 (1995).

[4] "Notice of Intent" starts the postconviction process. Wis. Stat. § 890.30(2)(b). It is the next step after the "Notice of Right" Lopez-Quintero signed in court on April 9,

(continued)

3

appropriate filings within 20 days constituted ineffective assistance of counsel, citing Strickland.

¶39 Although Lopez-Quintero's petition claims ineffective assistance for failing to initiate a direct appeal, the petition is not based on a transcript from an evidentiary hearing where trial counsel was questioned, or on an affidavit of counsel about why a Notice of Intent was not filed, or on Lopez-Quintero's affidavit stating when, where or how he specifically instructed counsel to appeal and that counsel refused to do so.

## II. DISCUSSION

### A. Standard of Review

¶40 A petition for writ of habeas corpus presents a mixed question of fact and law, wherein we do not disturb historic facts. State v. Pozo, 2002 WI App 279, ¶6, 258 Wis. 2d 796, 654 N.W.2d 12. However, whether habeas is available to the petitioner is a question of law that we independently review, while benefitting from the discussion of the court of appeals. Id.

### B. Habeas Corpus Petition

#### 1. General Principles

¶41 Habeas corpus is a civil action, even if brought about by a criminal charge. State ex rel. McCaffrey v. Shanks, 124 Wis. 2d 216, 223, 369 N.W.2d 743 (1985) (citing State ex rel. Korne v. Wolke, 79 Wis. 2d 22, 26, 255 N.W.2d 446 (1977)). As is required with other claims for relief, "[a] habeas petition

_____

2008.

must contain a statement of the legal issues and a sufficient statement of facts that bear on those legal issues, which if found to be true, would entitle the petitioner to relief." State ex rel. Coleman v. McCaughtry, 2006 WI 49, ¶18, 290 Wis. 2d 352, 714 N.W.2d 990. The burden of proof in a habeas corpus proceeding is on the petitioner to sustain his allegations by a preponderance of the evidence. State ex rel. Reddin v. Meekma, 99 Wis. 2d 56, 61, 298 N.W.2d 192 (Ct. App. 1980); State ex rel. Alvarez v. Lotter, 91 Wis. 2d 329, 334, 283 N.W.2d 408 (Ct. App. 1979) (citing Walker v. Johnston, 312 U.S. 275, 286, (1941)); Wenzlaff v. Burke, 250 Wis. 525, 527, 27 N.W.2d 475 (1947).

¶42 Habeas corpus when issued is an equitable writ that permits courts of equity to tailor a remedy that is necessary under the particular facts. State ex rel. Memmel v. Mundy, 75 Wis. 2d 276, 288, 249 N.W.2d 573 (1977). However, habeas is available only when the petitioner's liberty is restrained in violation of the constitution or by a tribunal that lacked jurisdiction. State ex rel. Marberry v. Macht, 2003 WI 79, ¶2, 262 Wis. 2d 720, 665 N.W.2d 155. We have concluded that a petition for habeas corpus is an appropriate vehicle by which to bring a claim of ineffective assistance of appellate counsel. State v. Knight, 168 Wis. 2d 509, 520, 484 N.W.2d 540 (1992).

¶43 As we have explained many times, in order to mount a successful claim under Strickland, deficient performance by counsel and prejudice to the defendant must be alleged and proved. Strickland, 466 U.S. at 681-82. "[C]ourts must 'judge

5

the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Roe, 528 U.S. at 477.

¶44 The United States Supreme Court has repeatedly held that disregarding "specific instructions" from a defendant to file a notice of appeal is "professionally unreasonable." Id. However, a defendant must clearly direct counsel to file an appeal in order to conclude that failing to do so was deficient performance. Id. (explaining that counsel is not deficient for not filing a notice of appeal when defendant has not clearly directed him to appeal). As Roe explained, "[t]o prove deficient performance, a defendant can rely on evidence that he sufficiently demonstrated to counsel his interest in an appeal. But such evidence alone is insufficient to establish that, had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal." Id. at 486.

¶45 In addition, the "right to claim ineffective assistance of counsel for failure to commence an appeal does not exist indefinitely." State ex rel. Smalley v. Morgan, 211 Wis. 2d 795, 802, 565 N.W.2d 805 (Ct. App. 1997).[5] As Smalley

---

[5] The majority opinion overrules State ex rel. Smalley v. Morgan, 211 Wis. 2d 795, 802, 565 N.W.2d 805 (Ct. App. 1997). Majority op., ¶1. In so doing, it incorrectly states that Smalley was "abrogated in part by State ex rel. Coleman v. McCaughtry, 2006 WI 49, 290 Wis. 2d 352, 714 N.W.2d 900." Coleman did not abrogate Smalley. Rather, Coleman explains that "the Smalley decision actually rests on the application of habeas principles" not on laches. Id., ¶25. In so doing, Coleman affirms Smalley's timeliness requirement.

6

explained, it was the petitioner's burden to show he was not "capable" of learning prior to filing habeas that counsel had not commenced any type of appeal on his behalf. Id. at 880 n.4. Rather, in order for habeas to issue, the petitioner must show that "the request for relief [was] made promptly and speedily." See State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶¶16, 17, 271 Wis. 2d 633, 681 N.W.2d 110 (discussing invocation of the court's equitable powers to issue a writ pursuant to Wis. Stat. § 809.51, a statutory provision that also applies to writs of habeas corpus).

¶46 I further note that "[e]quitable remedies are not available to one whose actions or inactions result in the harm." Lohr v. Viney, 174 Wis. 2d 468, 477, 497 N.W.2d 730 (Ct. App. 1993). In this regard, the petitioner's conduct is a critical factor in deciding whether according habeas relief is appropriate. Coleman, 290 Wis. 2d 352, ¶25 (citing Smalley, 211 Wis. 2d at 802 n.7, and explaining that Smalley correctly "places the burden of proof for timeliness of the [habeas] petition on Smalley").

¶47 Furthermore, finality requires that postconviction proceedings not continue indefinitely. State v. Escalona-Naranjo, 185 Wis. 2d 168, 181-82, 517 N.W.2d 157 (1994). For example, a convicted person is required to raise all grounds for relief from his or her conviction in the initial Wis. Stat. § 974.06 motion. Id. at 185.

7

2. Wisconsin Stat. §§ 809.51 and 782.04

¶48 Lopez-Quintero asserts a right to appeal by invoking this court's supervisory jurisdiction pursuant to Wis. Stat. § 809.51. Subsection (1) requires that the petition contain:

(a) A statement of the issues presented by the controversy;

(b) A statement of the facts necessary to understanding of the issues;

(c) The relief sought; and

(d) The reasons why the court should take jurisdiction.

Lopez-Quintero's petition also is required to comply with Wis. Stat. § 782.04(5), which commands a statement of "In what the illegality of the imprisonment consists." State ex rel. Santana v. Endicott, 2006 WI App 13, ¶10, 288 Wis. 2d 707, 709 N.W.2d 515.

¶49 Wisconsin Stat. § 809.51(1) requires more than an assertion that Lopez-Quintero wanted a direct appeal and he did not get one. It requires a statement of the "issues presented by the controversy" and "the facts necessary to understanding of the issues." Wisconsin Stat. § 782.04(5) requires an explanation of why Lopez-Quintero is being imprisoned unlawfully. These two statutes form the framework for what must be pled in a habeas petition.

### 3. Lopez-Quintero's Petition

¶50 Even though the majority opinion labels it as a "sufficiently pled habeas petition,"[6] Lopez-Quintero's petition for habeas is patently inadequate. The petition does not allege facts showing that Lopez-Quintero had made a specific request of counsel to appeal. Rather, the petition for habeas references the June 10, 2008 Affidavit of Indigency. However, that document demonstrates that no decision had been made on whether to appeal: "Atty Frederick Cohn appointed <u>to initiate appeal if desired</u>."[7]

¶51 Because the record before us is deficient, the majority's decision places it in the position of adding facts to the petition, so that if true, the petition would support finding that Lopez-Quintero specifically directed his counsel to appeal. The majority opinion goes on this factual journey with the erroneous belief that "[t]he burden to demonstrate why a statutorily-compliant claim for habeas relief should be denied as untimely rests with the party seeking to avoid a substantive review of the issue."[8] The majority opinion cites <u>Coleman</u>, 290 Wis. 2d 352, ¶2 for this amazing proposition. However, paragraph 2 of <u>Coleman</u> focuses on laches, explaining that if the State raises laches as a defense, it has the burden to prove the elements of that defense. However, the State did not plead in

---

[6] Majority op., ¶10.

[7] Affidavit of Indigency, p. 1 (emphasis added).

[8] Majority op., ¶27.

response to Lopez-Quintero's petition; therefore, the defense of laches is not at issue. Furthermore, Coleman concludes that habeas petitions have an obligation to plead facts which if true would afford the relief the petition seeks. Id., ¶18. Therefore, it is paragraph 18 of Coleman that is significant to Lopez-Quintero's petition, not paragraph 2.

¶52 Furthermore, by finding facts, the majority takes a far different tact than the United States Supreme Court followed in Roe where there had been an evidentiary hearing at which trial counsel testified. Roe, 528 U.S. at 475. Even after reviewing testimony from that evidentiary hearing, the Supreme Court concluded that the record from the hearing was insufficient; and it remanded for further proceedings. Id. at 487 (explaining, "we are unable to determine whether [counsel] had a duty to consult with respondent (either because there were potential grounds for appeal or because respondent expressed interest in appealing), whether she satisfied her obligations, and, if she did not, whether respondent was prejudiced thereby.").

¶53 Lopez-Quintero's petition says that he "wanted to pursue postconviction relief" and he and Attorney Christopher Cohen signed a Notice of Right. The petition also relates that "Lopez-Quintero could not recall any instance where he met with his attorneys to discuss the appeals process after sentencing."

¶54 Apparently the preparer of the habeas petition "spoke with" Attorney Christopher Cohen, but Attorney Cohen "could not remember what transpired between sentencing and the hearing on

10

the motion for new trial that would explain why neither he nor Attorney Frederick Cohn filed a Notice of Intent." There simply is nothing in the petition about when, where or how Lopez-Quintero specifically instructed his trial counsel to appeal or why an appeal was not pursued. Perhaps after denial of the motion for a new trial, counsel and Lopez-Quintero decided an appeal would not be worth pursuing. The petition provides no facts about any discussions with counsel on the merits or lack thereof in regard to an appeal.

¶55 Furthermore, the petition does not evidence that the preparers of the petition reviewed the transcripts of the trial that have been on file with the Racine County Clerk of Court since December of 2008. The petition gives us no indication of whether there was a nonfrivolous issue that would be put forward in an appeal if one were to go forward. Although identification of grounds for appeal is not required, identification of an appealable issue would have been of assistance to Lopez-Quintero's petition. Id. at 487.

¶56 In addition, the record is silent about why Lopez-Quintero waited ten years before seeking to institute an appeal. While it is true that his trial counsel did not file a Notice of Intent, it did not take Lopez-Quintero ten years to figure out that no appeal was pending. The record shows that he received oral and written notice that he had 20 days after sentencing to preserve his postconviction rights; yet, he did nothing.

¶57 Perhaps because the majority recognized that the habeas petition is deficiently pled, the majority opinion chose

11

to fill in facts that are not in the habeas petition. The majority acknowledges that factual allegations to which it refers are not in the record, and asserts that they came from Lopez-Quintero's brief.[9] If there actually were such facts, they should have been pled in the verified petition or contained within an affidavit signed by Lopez-Quintero that the habeas petition incorporated. There was no affidavit attached to the petition, and none of the facts in ¶26 of the majority opinion are in the petition or anywhere else in the record. Therefore, they should not have been considered when the majority decided that the State's objection to Lopez-Quintero's unexplained ten-year delay in petitioning for habeas was "immaterial."[10] Associated Bank, N.A. v. Brogli, 2018 WI App 47, ¶38, 383 Wis. 2d 756, 917 N.W.2d 37 (concluding that a reviewing court cannot resolve questions when pertinent facts are not of record); Lamb v. Manning, 145 Wis. 2d 619, 626, 427 N.W.2d 437 (Ct. App. 1988) (concluding that documents not of record or authenticated by affidavit must be ignored by the court).

¶58 Wisconsin Stat. § 809.51(1)(b) directs that a sufficient habeas petition must be grounded in "a statement of the facts necessary to understanding" how Lopez-Quintero specifically instructed counsel to appeal and that counsel refused to act on his instruction. His petition, which says

---

[9] Majority op., ¶26.

[10] Id. Can other appellants now supplement habeas petitions with factual allegations in their briefs? If so, this is new law and poor precedent to establish.

12

only that he wanted to appeal and missed the date, is not sufficient. Stated more completely, the petition does not allege when, where or how Lopez-Quintero specifically directed his trial counsel to appeal. Without Lopez-Quintero's specific direction to appeal, counsel's performance is not deficient. Roe, 528 U.S. at 477.

¶59 The petition in Coleman is an excellent example of how a petitioner for habeas can fulfill the pleading obligations of Wis. Stat. §§ 809.51(1) and 782.04. Coleman's habeas petition averred that although he wanted to appeal, counsel advised him that he "had no chance of obtaining any relief on appeal." Coleman, 290 Wis. 2d 352, ¶8. Coleman's petition then explained that failing to appeal the denial of his suppression motion was ineffective assistance because whether he had standing to challenge the search of his girlfriend's home was a significant and obvious issue. Id., ¶¶11, 12. Because denial of Coleman's suppression motion was the genesis for his guilty plea, if he were to prevail on the appeal and evidence found during the warrantless search were suppressed, he would have withdrawn his plea and his conviction would have been reversed. Id.

¶60 In the case before us, it is not surprising that the court of appeals denied the petition as having been filed too late. The petition does not narrate any facts that could be read to show that Lopez-Quintero was not capable of learning for ten years that no appeal was pending. Absent some reasonable narration about why he waited ten years to seek a direct appeal,

13

Wis. Stat. § 809.51(2) gives the court of appeals the discretion to dismiss habeas petitions ex parte. It provides:

> The court may deny the petition ex parte or may order the respondents to file a response with a supporting memorandum, if any, and may order oral argument on the merits of the petition.

¶61 Here, the court of appeals denied the petition ex parte, focusing on the lack of an explanation for the ten years that passed subsequent to Lopez-Quintero's sentencing. However, the inadequacy of Lopez-Quintero's petition should not result in this court giving him a pass on his obligations under Roe, Coleman, Strickland, Wis. Stat. §§ 809.51 and 782.04 to file a verified petition that articulates his specific instructions to counsel to appeal or supportive of a nonfrivolous trial error that he seeks to appeal.

¶62 To some extent, the majority opinion falls into the trap set by Lopez-Quintero's inadequate petition for habeas. The majority opinion does so when it responds to the narration in a petition rather than independently analyzing what is necessary for a sufficient habeas pleading. In so doing, the majority opinion erroneously gives the State the burden of proving that the habeas petition is sufficiently stated, impliedly finds facts necessary to its conclusion that the petition is "statutorily-compliant,"[11] and reverses the discretionary decision of the court of appeals, contending that

---

[11] Majority op., ¶¶24, 25, 27

14

principles of equity do not "require a habeas petitioner to allege timeliness in the petition."[12]

¶63 The majority opinion never says why the court of appeals erroneously exercised the discretion the legislature granted to it in Wis. Stat. § 809.51(2). If habeas had no time limitations and laches were the only defense to habeas seeking to appeal a ten-year-old conviction, the legislature would not have given courts the statutory authority in § 809.51(2) to deny habeas petitions ex parte. Stated otherwise, ex parte denials of habeas must rely on the sufficiency of the habeas petition because that is all a court would have available to consider prior to a State response.

### III. CONCLUSION

¶64 Because, as a matter of law, the foundational pleading requirements of habeas corpus seeking to revive a direct appeal have not been met by Lopez-Quintero's petition, I conclude that the court of appeals did not erroneously exercise its discretion in denying habeas relief ex parte, and I respectfully dissent from the majority opinion.

¶65 I am authorized to state that Justice ANNETTE KINGSLAND ZIEGLER joins this dissent.

---

[12] Majority op., ¶1.